United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN BARKER,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>INSIGHT GLOBAL, LLC, et al.,<br><br>　　　　　Defendants. | Case No. 5:16-cv-07186-BLF (HRL)<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORT NO. 4**<br><br>Re: Dkt. No. 101 |

INTRODUCTION

Insight Global, LLC ("Insight") is a staffing services company. John Barker ("Barker") was a long time employee of Insight and head of its San Francisco/San Jose office. On October 26, 2016, Insight terminated Barker's employment. Soon afterward, Barker obtained new employment with Beacon Hill Staffing Group, LLC ("Beacon Hill"), an Insight competitor.

Barker sued Insight for unpaid deferred compensation and also for a declaration that the non-compete and non-solicitation provisions of his employment contract were void under California Business and Professions Code § 16600.

Insight counterclaimed, accusing Barker of breaching his employment contract by (1) going to work for an Insight competitor without notifying Insight and (2) soliciting at least 8 Insight employees to quit (successfully with 3 of them). Insight also alleged claims for relief

1  based on interference with prospective economic advantage (the revenue that the 3 who left would
2  have generated) as well as interference with contract (same idea).  Insight said Barker
3  "encourage[ed]" the 3 to "solicit and/or assist in soliciting *certain* clients of Insight Global to
4  terminate, alter, and/or refrain from entering into continuing client relationships with Insight
5  global."  (Dkt. 29 ¶ 47) (emphasis added).

In Discovery Dispute Joint Report (DDJR ) #2, Insight sought an order compelling its requested discovery on the issue of whether Barker induced John McArthur ("McArthur"), Connor Cronin ("Cronin"), and Bryan Verduzco ("Verduzco") to quit Insight and come to work for Beacon Hill.  (These are the 3 mentioned in the previous paragraph, and they are non-parties to this action.)  The court in its ruling (Dkt. 87) did itself draft and permit some very focused discovery on that issue, but it is curious that now, in this DDJR #4, Insight seems to tout that order as a "win."  It now says that discovery such as it propounded last time is "undeniably relevant (as determined by this Court)" (DDJR #4, p.2, line 1) and asserts that its proposed compromise for solving the present dispute is "[b]ased on this Court's own findings, a fair and adequate resolution of this dispute…." (id., p 2, line 13).  In fact, the court in its order on DDJR #2 said that the discovery Insight had attempted to enforce was a "fishing expedition" and "an extreme example of discovery overreach" that "smacks of harassment."

## DISCUSSION

Now, back to the present.  In DDJR #4, the issue is the proper scope of discovery on Insight's claims that Barker "encouraged" McArthur, Cronin, and Verduzco to solicit "certain" customers of Insight to terminate or alter their relationship with Insight.  Notably, the Amended Counterclaim does not allege that Barker himself solicited any Insight customers.

Insight says it served "written discovery" to Barker and subpoenas duces tecum on Beacon Hill, McArthur, Cronin, and Verduzco.  It did not submit copies of this discovery to the court.  Instead, it told the court it would "compromise" and accept a dialed-back version of what it had originally asked for.  Here is the compromise:

1. Barker, McArthur, Cronin, and Verduzco will produce a "list" of any hiring managers or customers/accounts:  (a) with whom they interacted during their Insight

2

employment; and (b) with whom they have interacted during their Beacon Hill employment (Insight calls these "Overlap Customers");

2. Barker, McArthur, Cronin, and Verduzco will produce all electronic communications they had with the Overlap Customers since they have left the employ of Insight;

3. Barker, McArthur, Cronin, Verduzco, and Beacon Hill will produce documentation/information about revenue generated for Beacon Hill by the Overlap Customers since the date Barker's employment with Insight ended; and

4. The court will reopen the depositions of Barker, McArthur, Cronin, and Verduzco for questions about discovery produced pursuant to 1, 2, and 3, above.

First, the compromise's definition of Overlap Customers assumes facts that may or may not be true. It assumes that any customer of Insight did not become a customer of Beacon Hill until after Barker joined Beacon Hill. Is it not possible that both Insight and Beacon Hill had one or more mutual customers long before Barker left Insight?

Insight tells the court that it has a list of every customer/account that Barker, McArthur, Cronin, and Verduzco interacted with during their Insight employment, so why ask them to create a "list"?

Why should Barker produce communications with any customer/account, since he is not alleged to have wrongfully solicited any of Insight's? Indeed, why should Beacon Hill do so?

Why ask for electronic communications with every so-called Overlap Customer? The Amended Counterclaim alleges that McArthur, Cronin, and Verduzco were encouraged by Barker to solicit "certain" customers. How about Insight naming the customers or accounts that have been solicited? In fact, how about identifying the customers who have succumbed to solicitation and moved their business or cut way back? Why not focus in on where Insight lost a customer or lost some volume of business that might be attributed to solicitation by McArthur, Cronin, and Verduzco? It seems that the only relevant customers would be those that were solicited on account of Barker's encouragement, which would exclude customers, if any, that may have been solicited absent any such encouragement.

Here we get to the root of the problem the court has with the compromise discovery

requests. The attorney for Barker, et al. tells the court that Insight's Fed. R. Civ. P. 30(b)(6) witness testified that Insight had not looked into whether or why it had lost business from any customer, was not aware whether Barker, Cronin, McArthur or Verduzco solicited any Insight customers, and did not know if Beacon Hill had earned any revenue from any Insight customers. The court has not seen the actual testimony, but it is notable that Insight does not dispute its characterization.

Indeed, the absence of a denial from Insight perhaps explains why it wants wholesale information on every customer that Barker, McArthur, Cronin, or Verduzco ever dealt with at both Insight and Beacon Hill. It looks as if Insight wants "all electronic communications" with every so-called Overlap Customer because it cannot identify any actual, *affected* customer. This smells like another fishing expedition, and the court will not countenance it.

The request for preparation of any "lists" and for production of documents according to the compromise is denied. The subpoenas are quashed. The question of reopening depositions is moot.[1]

SO ORDERED.

Dated: September 7, 2017

HOWARD R. LLOYD
United States Magistrate Judge

---

[1] The court is not foreclosing appropriately framed discovery on the issues here.

4