UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN BARKER,<br><br>    Plaintiff,<br><br>    v.<br><br>INSIGHT GLOBAL, LLC, et al.,<br><br>    Defendants. | Case No. 5:16-cv-07186-BLF (HRL)<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORT NO. 1**<br><br>Re: Dkt. No. 61 |

Plaintiff John Barker sues his former employer, Insight Global, LLC ("Insight"), for unpaid deferred compensation and also for a declaration that the non-compete and non-solicitation provisions of his employment contract are void under California Business and Professions Code § 16600. Insight counterclaimed, accusing Barker of breaching his employment contract (1) by going to work for an Insight competitor without notifying Insight and (2) by soliciting some Insight employees to quit and to join Barker's present employer, Beacon Hill Staffing Group, LLC ("Beacon Hill"). Three former Insight employees that Barker allegedly induced to leave defendant for Beacon Hill are John McArthur, Connor Cronin, and Bryan Verduzco (collectively, "Beacon Hill Witnesses"). Barker, Beacon Hill, and the Beacon Hill Witnesses are represented by the same attorneys.

At issue in Discovery Dispute Joint Report No. 1 (DDJR 1): whether information about

the payment of legal fees in this matter is protected by the attorney-client privilege. Specifically, Insight wants to know about any agreements or arrangements Beacon Hill might have with Barker or the Beacon Hill Witnesses to foot the bill for this litigation. Insight sought this information from Barker through the following requests:

> **Interrogatory 4**: State the amount you are claiming in attorneys' fees and costs in this case (and if the entire amount is unknown, the amount as of the date of your answer to this interrogatory response and an estimate of any additional amounts likely to be claimed by you), and, for each amount of fees you claim in this case, please state the manner in which such amount was calculated, and identify each document relating to the arrangement that you have for the payment of attorneys' fees and costs to any legal counsel in this matter.
>
> **RFP 27**: All documents relating to or evidencing any communications, negotiations, or agreements between you and Beacon Hill (or any of its agents) regarding any undertaking by Beacon Hill to pay for your legal fees incurred in connection with this lawsuit or any other litigation with Insight Global.

(DDJR 1, Ex. A).

Additionally, Insight served a subpoena duces tecum on Beacon Hill seeking similar information:

> **RFP 9**: All documents relating to or evidencing any communications, negotiations, or agreements between Beacon Hill and Barker regarding any undertaking by Beacon Hill to indemnify Barker for any losses resulting from litigation relating to Barker's obligations to and/or Employment Agreement with Insight Global, or to pay for Barker's legal fees incurred in connection with any litigation involving Insight Global.

(Id., Ex. C).

Insight also served each of the Beacon Hill Witnesses with a subpoena asking for the same information:

> **RFP 12**: Any documents reflecting or pertaining to an agreement with Beacon Hill or one of its agents to pay for your legal counsel or to indemnify you against claims.

(Id., Exs. G-I).

And, in separately filed DDJR 5, Insight sought personnel records, including any that showed that Barker promised that Beacon Hill would pay legal fees if Insight took legal action for

leaving the company to go work for Beacon Hill.[1]

Insight alleges that Barker induced defendant's employees to resign by promising them that Beacon Hill would pay their legal fees and provide indemnification if Insight took legal action. Thus, says Insight, the requested information primarily is relevant to the disputed recruitment issues, as well as to Insight's defense against Barker's deferred compensation claim (according to Insight, the subject deferred compensation plan includes a provision barring Barker from inducing or attempting to induce Insight employees to leave the company).[2] Insight seeks an order compelling responsive discovery and reopening Barker's and the Beacon Hill Witnesses' depositions on this issue.

Barker and the Beacon Hill Witnesses say that they answered questions in deposition, without objection, about any promises to pay for legal fees in the course of any alleged solicitation. However, they maintain that information about the payment of their legal fees, and specifically whether Beacon Hill is paying those fees, is protected by the attorney-client privilege.

"Generally, the identity of an attorney's client and the nature of the fee arrangement between an attorney and his client are not privileged." In re Grand Jury Subpoenas (Hirsch), 803 F.2d 493, 496 (9th Cir. 1986); see also In re Osterhoudt, 722 F.2d 591, 593 (9th Cir. 1983) (same). "The fact of representation and the associated fee arrangement are preliminary, by their own nature, establishing only the existence of the relation between client and counsel, and therefore, normally do not involve the disclosure of any communication arising from that relation after it was created." Hirsch, 803 F.2d at 496 (citing Osterhoudt, 722 F.2d at 593).

There is an exception to the general rule where disclosure "conveys information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client . . .." Baird v. Koerner, 279 F.2d 623, 632 (9th Cir. 1960). Since Baird, the Ninth Circuit has made it clear that this exception is "an extremely narrow one." In re Horn, 976 F.2d 1314, 1317 (9th Cir. 1992). "The principle of *Baird* was not that the privilege applied because the

---

[1] The court has issued a separate order disposing of other issues raised in DDJR 5.

[2] Insight also argues that the discovery is relevant to Barker's claim for contractual attorney's fees. Barker, however, persuasively argues that the identity of the fee-payor is not relevant to that claim.

3

identity of the client was incriminating, but because in the circumstances of the case disclosure of the identity of the client was in substance a disclosure of the confidential communication in the professional relationship between the client and the attorney." Osterhoudt, 722 F.2d at 593. "Information regarding the fee arrangement ordinarily is not part of the subject matter of the professional consultation and therefore is not privileged communication even though it may evidence wrongdoing by the client." Id.; see also Horn, 976 F.2d at 1317 ("Otherwise unprotected information does not become privileged merely because that information might provide evidence of a client's wrongdoing."). Rather, the key inquiry is whether disclosure of the requested information is in substance tantamount to the disclosure of a confidential professional communication. Hirsch, 803 F.2d at 497; see also United States v. Blackman, 72 F.3d 1418, 1425 (9th Cir. 1995) (stating that the privilege has been applied where "the fee-payer had advised [the retained attorney] of his involvement in the crime with which defendant was charged" and "the fee arrangements and fee-payer's identity were therefore inextricably intertwined with confidential communications and protected by the attorney-client privilege.") (internal quotations and citation omitted).

Barker, et al.'s privilege argument goes like this: If Insight's theory is true, then information indicating whether Beacon Hill is, in fact, paying the legal fees "would be" privileged, because the requested discovery would reveal Barker's and the Beacon Hill Witnesses' motives for seeking legal advice and retaining counsel---i.e., that they either violated or intended to violate their contractual obligations to Insight. But, Barker maintains that Insight's theory is absolutely false. Moreover, Barker, et al. have not presented any facts demonstrating that disclosure of information indicating whether Beacon Hill is paying legal fees conveys the substance of any privileged communications. At most, Barker appears to object to this discovery because Insight may use it to prove its theory that he used the payment of legal fees to entice Insight employees to leave the company and join Beacon Hill. As discussed above, however, the privilege does not extend to otherwise unprotected information simply because that information might evidence a client's wrongdoing.

Nevertheless, as drafted, Insight's discovery requests are broad in scope and encompass

4

privileged materials within their sweep. Also, Insight has not convincingly demonstrated proportionality of discovery pertaining to litigation other than the present one. Accordingly, the court grants Insight's request for discovery in part only as follows: Barker, Beacon Hill, and the Beacon Hill Witnesses shall produce responsive documents sufficient to show any agreements between Beacon Hill and Barker and between Beacon Hill and the Beacon Hill Witnesses to pay their legal fees in this litigation. Production shall include any personnel records that show that Barker promised the Beacon Hill Witnesses, as part of his alleged solicitation, that Beacon Hill would cover their attorney's fees if they were sued for leaving the company to join Beacon Hill. Other than to identify documents being ordered produced, Insight's request for an order compelling a further response to Interrogatory 4 is denied at this time. Insight's request to re-open depositions is denied.

SO ORDERED.

Dated: October 23, 2017

HOWARD R. LLOYD
United States Magistrate Judge