**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOHN BARKER,<br><br>   Plaintiff,<br><br>v.<br><br>INSIGHT GLOBAL, LLC, et al.,<br><br>   Defendants. | Case No. 16-cv-07186-BLF<br><br>**ORDER GRANTING IN PART AND TERMINATING IN PART AS MOOT DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[Re: 40] |

Plaintiff John Barker sues his former employer Insight Global, LLC ("Insight Global") and the company's employee benefit plan, Second Amended and Restated Insight Global, LLC 2013 Incentive Unit Plan (the "Plan"), claiming that Insight Global enforces an unlawful employment agreement, denied him benefits under the employee benefit plan, and wrongfully deprived him of his employment benefits upon termination. His First Amended Complaint ("FAC") pleads eight claims, which can be divided into three categories. The first and second claims are brought as a putative class action against Insight Global. The third claim is brought on behalf of Barker alone against Insight Global and the Plan. The fourth, fifth, sixth, seventh, and eighth claims are brought on behalf of Barker alone against Insight Global.

Pursuant to the Federal Rules of Civil Procedure 12(b)(6), Defendants filed a motion to dismiss the third, fourth, and fifth claims, or in the alternative, to stay the third claim pending completion of the Plan's administrative review of Barker's claim. Having considered the papers submitted by the parties and the oral argument presented at the September 14, 2017 hearing, the Court GRANTS IN PART and TERMINATES IN PART as moot Defendants' motion to dismiss with LEAVE TO AMEND.

## I. BACKGROUND

For purposes of considering this motion, the Court deems the following allegations pled in the Complaint to be true.

### A. The First Amended Complaint

Insight Global provides staffing services for companies in the information technology, finance, accounting, engineering and government industries. FAC ¶ 3, ECF 26. Barker started working for Insight Global as a Recruiter on March 13, 2006. *Id.* ¶ 5. He began working at Insight Global's Atlanta, Georgia office until he relocated to the Irvine, California office around February 2008. *Id.* ¶¶ 2, 5, 9. From September 2009 to October 26, 2016, he worked as an Account Manager, Sales Manager, and Director of Operations at Insight Global's San Jose and San Francisco offices. *Id.* ¶ 5. On October 26, 2016, Insight Global terminated his employment. *Id.*

During the earlier period of Barker's employment, Insight Global sent him several offer letters that purported to set out the terms and conditions of his employment. *Id.* ¶ 10. Barker received the letters around March 28, 2006 and May 9, 2007. *Id.* Those letters both prohibited Barker from soliciting Insight Global's employees and customers for one year after the termination of his employment. *Id.* They also included a non-compete provision that barred Barker from engaging in technical staffing services within a 50 mile radius of any Insight Global office for one year after his termination. *Id.* According to the FAC, those provisions are invalid under California law but Insight Global did not provide a revised letter excluding those provisions after he moved to the Irvine office in California. *Id.*

In addition, Barker and Insight Global executed several versions of an At-Will Employment Agreement around October 31, 2011 and November 17, 2015. *Id.* ¶ 11. According to the FAC, the November 17, 2015 At-Will Employment Agreement, which is the most recent version, contains unlawful non-solicitation and non-compete provisions. *Id.* ¶¶ 12–15. Specifically, that At-Will Employment Agreement contains an "Agreement Not to Solicit Customers and Clients" provision that prohibits Barker from soliciting customers for one year after the termination of his employment with Insight Global. *Id.* ¶ 12. The At-Will Employment

Agreement also requires Barker to provide a written notice to Insight Global if he obtains new employment at a competing staffing business within one year of his departure from Insight Global. *Id.* ¶ 15.

Around January 2013, Insight Global and Barker executed the Plan, which provides deferred compensation payable after the termination of his employment. *Id.* ¶ 16. The amount of compensation is in "Units" of value accumulated over the course of employment. *Id.* The Plan requires that an employee forfeit all Units if Insight Global terminates the individual for "cause" as determined by the Plan's Board. *Id.* ¶ 17. According to the FAC, the Plan conditions payment on compliance with the non-compete and non-solicitation provisions imposed by Insight Global that are unlawful under California law, including limitations prohibiting the employee from:

> (1) engaging in the business technical staffing or other technical services within 50 miles of either the office the employee worked or any other office the employee worked during the two years preceding the termination of employment;
> (2) soliciting Insight Global's customer for two years preceding the termination of employment; and
> (3) soliciting business or good will from Insight Global for any accounts or personnel that became known to the employee through the employment at Insight Global.

*Id.* ¶ 18. The Plan also contains a severability provision, which states that the non-compete and non-solicitation provisions do not apply to employees who are residents of California at the time of termination of their employment. *Id.* ¶ 19.

The issues presented in this instant motion relate to the following allegations. On October 26, 2016, Barker was terminated. *Id.* ¶ 21. Insight Global's General Counsel and Secretary, David C. Lowance, Jr., sent a letter to Barker, stating "I regret to inform you that we consider your termination to be for 'cause.'" *Id.* Insight Global did not provide a reason for the termination. *Id.* The termination letter also "reminded" Barker of his purported obligations "not to (1) compete against Insight Global in its lines of business within certain geographic areas, (2) solicit any of the customers or prospective customers with whom [he] had material contact while at Insight Global."

3

*Id.* ¶ 23. According to the FAC, Insight Global falsely claimed for "cause" termination to deprive Barker's deferred compensation under the Plan which amounts to about $344,304 and the termination letter's assertion of the non-compete and non-solicitation obligations was unlawful. *Id.* ¶ 21.

After his termination, Insight Global through its employees made statements concerning Barker, including that he "cussed out" his manager, Matt Gonzalvez, and that he "was not performing well on his sales metrics." *Id.* ¶ 22. The FAC alleges that those statements are false. *Id.*

Barker filed this action on December 15, 2016. ECF 1. In response, Insight Global filed counterclaims against Barker, alleging that he breached their employment agreement. ECF 29.

**B.  Plaintiff Barker's Claims**

As mentioned, Barker asserts eight claims in the FAC. The first claim requests declaratory relief as to the enforceability of the non-solicitation of customers provisions in Insight Global's employment agreements and offer letters to its California employees. FAC ¶¶ 39–45. The second claim seeks restitution and injunctive relief based on the allegation that the non-solicitation provisions violate California's Business and Professions Code §§ 17200 *et seq*. *Id.* ¶¶ 46–50. Those two claims are brought on behalf of a purported class against Insight Global.

Under the third claim, Barker seeks payment of his purported deferred compensation in the amount of $344,304 pursuant to 29 U.S.C. § 1132(a)(1)(B). *Id.* ¶¶ 51–56. This claim is brought against both Insight Global and the Plan. Barker's fourth claim is based on a breach of implied covenant of good faith and fair dealing. *Id.* ¶¶ 57–61. He alleges that Insight Global falsely claimed that Barker's termination was for "cause" to avoid paying compensation which he is entitled under the Plan. *Id.* ¶ 60. The fifth claim is for wrongful termination in violation of public policy. *Id.* ¶¶ 62–67. Under this claim, Barker alleges that Insight Global wrongfully fired him to avoid paying compensation in violation of public policy. *Id.* ¶¶ 64–65. The fourth and fifth claims are brought by Barker alone against Insight Global.

The sixth and seventh claims are based on alleged violations of California Labor Code §§ 203, 227.3. *Id.* ¶¶ 68–75. The eighth claim is a defamation claim. *Id.* ¶¶ 76–81. Those last

4

three claims are brought on behalf of Barker alone against Insight Global.

The third, fourth, and fifth claims are subject to the instant motion to dismiss.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

The parties agree that certain facts occurred after the original complaint was filed on December 15, 2016. On February 7, 2017, the Compensation Committee of IG Igloo Holdings, Inc. ("Committee"), which administers the Plan, sent a letter to Barker and informed him that the filing of the original complaint triggered review under the Plan's Claim Procedure. ECF 40-1. In response, Barker submitted a letter and supporting documents to the Committee, claiming that he has not forfeited his deferred compensation. Ex. 1 to Paetkau Decl., ECF 49-1. On March 20, 2017, the Committee denied Barker's claim on the grounds that he purportedly "induced or attempted to induce" Insight Global's employees to join another company in violation of the Plan. Ex. 2 to Paetkau Decl., ECF 49-1. Hence, the Committee did not determine whether Barker was terminated for "cause." *Id.* The denial letter noted that Barker could appeal the Committee's decision under the Plan's review procedures. *Id.*

The Court now turns to the motion to dismiss the third, fourth, and fifth claims.

### A. Third Claim: Claim for Benefits under 29 U.S.C. § 1132(a)(1)(B)

Under the FAC's third claim, Barker seeks payment of his purported deferred compensation from Defendants in the amount of $344,304 pursuant to 29 U.S.C. § 1132(a)(1)(B). FAC ¶¶ 51–56. This section of the Employment Retirement Income Security Act ("ERISA")

5

provides that a participant or beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The FAC alleges that Insight Global falsely claimed that Barker was terminated for "cause" to deprive him of his right to receive "payment of the units of value accumulated over the course of his employment" under the Plan. FAC ¶ 54.

Defendants argue that the third claim should be dismissed because Barker "failed to exhaust" the Plan's remedies. Mot. 8–9, ECF 40. They assert that the Committee's March 20, 2017 denial is insufficient to exhaust Barker's claim and that his appeal must be concluded before he can pursue legal action. Reply 7, ECF 53. In the alternative, they request that the third claim "should be stayed pending completion" of the review process set forth in the Plan. Mot. 10; Reply 8. Barker counters that the Plan's "administrative process would be futile" because the Committee "would reach the same decision" under the Plan's appeals procedure. Opp'n 8, ECF 49.

During oral argument, Defendants explained that they expected the Committee to issue a decision on Barker's appeal within a week. Oral Arg. Tr. 3:34–4:1, ECF 116. As such, Defendants withdrew their exhaustion arguments and request for stay in relation to the third claim. *Id.* at 3:17–4:3; 30:16–19. Barker's third claim is no longer challenged in this motion. Accordingly, Defendants' motion to dismiss the third claim, or in the alternative, stay the third claim is TERMINATED as moot.

### B. Fourth Claim (Breach of Implied Covenant of Good Faith and Fair Dealing) and Fifth Claim (Wrongful Termination in Violation of Public Policy)

The remaining claims are the fourth and fifth claims. Barker's fourth claim is based on a breach of implied covenant of good faith and fair dealing. FAC ¶¶ 57–61. According to the FAC, the Plan formed a contract between Insight Global and Barker whereby he is entitled to receive his deferred compensation. *Id.* ¶ 58. Insight Global, however, allegedly falsely claimed that Barker's termination was for "cause" to avoid paying the compensation. *Id.* ¶¶ 58, 60. The fifth claim is based on a wrongful termination in violation of public policy. *Id.* ¶¶ 62, 67. Barker alleges that Insight Global discharged him to avoid paying compensation, defrauding its employee in violation

6

of public policy. *Id.* ¶¶ 63–65.

Defendants argue that the fourth and fifth claims are preempted by ERISA. Section 514(a) of ERISA preempts and supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). "'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). According to Defendants, the Plan is an employee benefit plan covered by ERISA (i.e., an "ERISA plan"). Mot. 7–8. They assert that Barker's fourth and fifth claims are related to the Plan and thus are preempted by ERISA. *Id.*

### 1. Whether the Plan is an ERISA Plan May be Determined on a Motion to Dismiss

Barker argues that the existence of an ERISA plan is a question of fact and the Court cannot determine whether the Plan is covered by ERISA at a motion to dismiss stage. Opp'n 4–5. He contends that the ERISA determination should be made on a motion for summary judgment. *Id.* at 4.

Contrary to Barker's assertion, courts have routinely determined whether an employee benefit plan is an ERISA plan on a motion to dismiss. *See, e.g.*, *Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940 (9th Cir. 2008); *Edwards v. Lockheed Martin Corp.*, 617 F. App'x 648, 649 (9th Cir. 2015); *Cox ex rel. Cox v. Reliance Standard Life Ins. Co.*, No. 1:13-CV-00104, 2013 WL 2156546 (E.D. Cal. May 17, 2013); *Toohey v. Cigna Corp.*, No. CV-09-88, 2009 WL 2169859 (D. Or. June 24, 2009), *report and recommendation adopted,* No. CIV. 09-88, 2009 WL 2223622 (D. Or. July 21, 2009); *Blair v. Young Phillips Corp.*, 158 F. Supp. 2d 654 (M.D.N.C. 2001). As "[t]he existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person," *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1149 (9th Cir. 2000), on a motion to dismiss, courts have looked at the complaint's allegations to answer that inquiry. *See, e.g.*, *Sgro*, 532 F.3d at 942–43, 942 n.1; *Toohey*, 2009 WL 2169859, at *4. In doing so, courts have considered documents "which [were] properly submitted as part of the complaint" and relied upon by the plaintiff, when the authenticity of the documents is not contested. *Toohey*, 2009 WL 2169859, at *4 (citing *Lee v. City of Los*

7

*Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). If the parties disagree as to whether the "documents accurately reflect the terms of the plan as it was actually implemented," then an ERISA determination may not be made on a motion to dismiss. *Sgro*, 532 F.3d at 942 n.1. Here, there is no such disagreement. Therefore, the Court rejects Barker's argument.

### 2. Defendants have Established that the Plan is an ERISA Plan

The Court now turns to whether the Plan is an ERISA plan in light of the FAC and its attached documents. Barker attached the Plan as Exhibit 2 to his FAC. The authenticity of that document is not disputed.

Here, the parties agree that the test for determining the existence of an ERISA plan is whether the plan at issue enables a reasonable person to "ascertain[] the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." Opp'n 4; Reply 3; *Cox*, 2013 WL 2156546, at *3. Also, the plan must establish "an ongoing administrative program." *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987). Based on the written document of the Plan, Ex. 2 to FAC, ECF 26 ("2013 Plan"), the Court finds that those factors are present.

First, the Plan identifies the intended benefits as "Units" which value is awarded and distributed to employees of Insight Global. The Plan is administered by the Board of Directors of IG Igloo Holdings, Inc. ("Board"),[1] the indirect parent company of Insight Global. 2013 Plan § 2. Section 6 of the Plan provides that each year the Board awards "Units" to eligible employees. *Id.* § 6. The Board determines the value of a Unit and credits the value to the employee's account. *Id.* §§ 2(s)–(t), 7.

Second, the Plan specifies that the beneficiaries are employees "selected by the Board from key Employees of [Insight Global]." *Id.* § 5. Employees who are both (a) select management or highly compensated employees as determined by the Board and (b) "highly compensated employees" as defined in § 414(q)(1)(B) of the IRS Code of 1986 are eligible to participate. *Id.* §§ 2(g), 5. Neither the awarded Units nor the right to payment for the value of the Units can be

---

[1] The Board may designate its authority to a committee. 2013 Plan § 2(e). Here, the Compensation Committee of IG Igloo Holdings is the designated administrator of the Plan. Lowance Decl. ¶¶ 2–3, ECF 40-1.

8

transferred to other individuals. *Id.* § 8.

Third, the Plan provides that Insight Global is the source of the benefits awarded to the employees. *Id.* § 12. Also, the Plan states that it is an "unfunded" plan. *Id.* To the extent that Insight Global establishes an escrow, trust, or trust fund to pay and manage the benefits, they are considered general assets of Insight Global. *Id.* In other words, the contributions are made by Insight Global.

Fourth, the procedures for receiving benefits are set forth in the Plan. For instance, section 10 of the Plan states the time and manner employees can receive their awarded Units as of the date of termination. *Id.* § 10. The manner depends on whether the termination was "for cause," death or disability, or other reasons. *Id.* Moreover, the Plan's Appendix A provides the claims procedure for requesting the benefits. Appendix A of 2013 Plan, ECF 26.

Fifth, the Plan establishes an "ongoing administrative program" as discussed below. In *Fort Halifax*, the Supreme Court held that an ERISA plan requires an ongoing administrative program and "a one-time, lump-sum payment triggered by a single event" is insufficient. 482 U.S. at 11–12. The Ninth Circuit has interpreted the "ongoing administrative program" requirement to inquire whether the benefit plan at issue involves an "ongoing, particularized, administrative, discretionary analysis." *See, e.g.*, *Edwards*, 617 F. App'x at 649–50 (citing *Delaye v. Agripac, Inc.*, 39 F.3d 235, 238 (9th Cir. 1994)).

Here, the Plan involves an "ongoing administrative program" that requires particularized, administrative, discretionary analysis throughout its operation. On awarding the "Units," the Board makes numerous discretionary decisions. For example, section 3 of the Plan provides that the Board has discretion on any "determination, evaluation, election, decision, . . ., amendment" under the Plan. 2013 Plan § 3. The Board may establish regulations that "it deems necessary . . . to determine eligibility to participate in the Plan." *Id.* Also, each year, the Board selects employees who will receive "awards of Units" and determines the number of awarded Units. *Id.* § 5. Section 7 provides that the Board may determine the Unit Value and adjust each employee's account to appropriately reflect such Unit Value. *Id.* § 7. Hence, the numerous discretionary features in the Plan support that it qualifies as an employee benefit plan under ERISA. *See Edwards*, 617 F. App'x at 649–50 (holding that the defendant's plan was an ERISA plan because it

required "ample discretionary decisions . . . on eligibility, disqualification, adjustments in awards, interpretation of [the] terms, and claims procedure).

In addition, upon termination of employment, the Plan further requires discretion of the Board that involves an ongoing administrative scheme. Section 10 of the Plan provides that, if the termination is "for cause," the terminated employee forfeits the awarded Units. 2013 Plan § 10. If the termination is due to any other reason than for cause, death or disability, then the deferred compensation may be paid out over five years after a two-year "restricted period," where the employee is subject to non-compete and non-solicitation provisions of the Plan. *Id.* § 10. Also, the employee's request for the deferred compensation is subject to the review of the Board. Appendix A to 2013 Plan. To be sure, the one time "for cause" determination alone is insufficient to implicate an ongoing administrative scheme. *See Delaye*, 39 F.3d at 237. However, the Board's discretionary "for cause" determination combined with its review of the non-compete and non-solicitation provisions over an extended two-year period supports a discretionary ongoing administrative program. *Blair*, 158 F. Supp. at 660. Indeed, benefit payments that are contingent on an employee's compliance with a non-compete provision supports a finding of an ERISA plan because the benefit plan requires (1) continuous monitoring of the employee's activities and (2) the plan administrator's discretionary evaluation on whether the employee complies with the non-complete provision. *Id.* at 662–63 (holding that the discretionary determination of a two-year non-compete provision implicates "ERISA's concerns regarding the potential for employer abuse").

For the above reasons, Defendants have established that the Plan qualifies as an ERISA plan based on the Plan's features. Barker does not dispute those features.

During oral argument, Barker argued that the Board which administers the Plan may have a conflict of interest. Oral Arg. Tr. 26:1–16. However, even if that were true, the conflict of interest does not remove the Plan from being an ERISA plan. Rather, it is a factor that the Court considers in reviewing the Board's decision in denying benefits. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).

### 3. Barker's Fourth and Fifth Claims Are Preempted by ERISA

Section 514(a) of ERISA preempts and supersedes "any and all State laws insofar as they

may now or hereafter *relate to* any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a) (emphasis added). "The pre-emption clause is conspicuous for its breadth." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990) (citation omitted). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)).

Here, Barker's fourth and fifth claims reference the Plan because both claims rely on allegations that Insight Global engaged in unlawful acts to avoid paying deferred compensation that was awarded under the Plan. FAC ¶¶ 57–67. Therefore, the fourth and fifth claims, which are brought under state contract and tort law, are preempted pursuant to 28 U.S.C. § 1144(a). *Ingersoll-Rand*, 498 U.S. at 140–41 (holding ERISA preempted a state law claim that the employee was wrongfully terminated due to the employer's desire to avoid paying benefits); *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1191 (9th Cir. 2010) (holding that state law fraud, misrepresentation, and negligence claims were preempted because those claims necessarily referenced an ERISA plan).

Accordingly, Defendants' motion to dismiss the fourth and fifth claims under ERISA preemption is GRANTED with LEAVE TO AMEND. Courts have given leave to amend when the plaintiff may plead factual allegations that would show the benefit plan at issue is removed from ERISA, for example, pursuant to safe harbor provisions. *See, e.g.*, *Sgro*, 532 F.3d at 942–43.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED IN PART with LEAVE TO AMEND and TERMINATED IN PART as moot. Barker may file an amended complaint as to the dismissed fourth and fifth claims **within twenty-one (21) days** of the date of this order.

**IT IS SO ORDERED.**

Dated: November 21, 2017

BETH LABSON FREEMAN
United States District Judge

11