**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JOHN BARKER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>INSIGHT GLOBAL, LLC, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-07186-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS WITH LEAVE TO AMEND**<br><br>[Re: 42] |

Plaintiff John Barker brought this action against his former employer Insight Global, LLC ("Insight Global") and the company's employee benefit plan, Second Amended and Restated Insight Global, LLC 2013 Incentive Unit Plan. He claims that Insight Global enforces an unlawful employment agreement, denied him benefits under the employee benefit plan, and wrongfully denied him of his employment benefits upon termination. Defendant Insight Global, in turn, asserts that Barker unlawfully solicited its employees after he left the company. Specifically, it alleges counterclaims against Barker for breach of contract, intentional interference with prospective economic advantage, intentional interference with contractual relations, violations of California Business and Professions Code § 17200.

Before the Court is Barker's motion to dismiss Insight Global's First Amended Counterclaims ("FACC"). Having considered the papers submitted by the parties and the oral argument presented at the September 14, 2017 hearing, the Court GRANTS Barker's motion to dismiss with LEAVE TO AMEND.

**I.　BACKGROUND**

For purposes of considering this motion, the Court deems the following facts alleged in Insight Global's counterclaims to be true.

## A. Insight Global's Allegations

Insight Global is an international staffing services company with a particular focus in the information technology, accounting, and finance sectors. FACC ¶ 6, ECF 29. Insight Global's business model is based on providing extensive training and experience for, and sharing confidential information with, its employees. *Id.* ¶ 8. The employees are exposed to and develop knowledge regarding Insight Global's key existing customer relationships, sales strategy for developing business relationships, and information on its hiring managers and vendor managers who are primary contacts with customers. *Id.* ¶ 9.

Barker worked at Insight Global from March 13, 2006 to October 26, 2016. *Id.* ¶ 10. He was first hired as a Recruiter, but also worked as an Account Manager, Sales Manager, and Director of Operations in Insight Global's San Jose and San Francisco offices. *Id.*

During the course of his employment, Barker executed several versions of an at-will employment agreement. *Id.* ¶ 11. When Barker's employment with Insight Global was terminated, the operative Employment Agreement was the one executed on November 17, 2015. *Id.* Section 4 of that Employment Agreement contains a provision entitled "AGREEMENT NOT TO SOLICIT EMPLOYEES." *Id.* That provision provides that for one year following termination of employment with Insight Global, Barker:

> shall not directly or indirectly, or in concert with others, solicit or encourage any person who is an employee of, or contractor or consultant for, [Insight Global], to resign from or terminate such employment or consulting relationship with [Insight Global]. [Barker] further agrees that [Barker] shall not, during the [year following termination], directly or indirectly, or in concert with others, solicit or encourage any person who is, or within one year prior to the solicitation was, an employee of [Insight Global] providing staffing services for [Insight Global], to perform staffing services for any corporation, individual, enterprise, entity, or association that competes with [Insight Global] in [Insight Global]'s Business (a "<u>Competing Staffing Business</u>").

*Id.* (alteration in original). In section 13, the Employment Agreement contains a provision entitled "FUTURE EMPLOYMENT." *Id.* ¶ 12. That provision states that for one year following termination of employment with Insight Global:

> should [Barker] accept employment or other relationship for remuneration with any Competing Staffing Business, [Barker] shall give written notice to [Insight Global] of such employment

2

immediately upon acceptance of said employment, and in no event less that fourteen (14) days prior to the commencement of such employment. […] [Barker] agrees that failure to provide the written notice and affirmation required by this section shall constitute a breach of this Agreement and may cause [Insight Global] irreparable harm.

*Id.* (alteration in original). Insight Global alleges that Barker violated the two provisions in sections 4 and 13 of the Employment Agreement as set forth below.

After being terminated from Insight Global, Barker began working at a Competing Staffing Business but failed to notify Insight Global regarding his new employment. *Id.* ¶ 13. According to Insight Global, Barker misused its confidential information concerning employee salaries and solicited Insight Global employees, including "John McArthur, Connor Cronin, Bryan Verduzco, Candice Sanchez, Tim Silva, Hermis Alvarenga, Austin March, and Amanda Pizzimenti, to terminate their employment with Insight Global and work for the Competing Staffing Business." *Id.* ¶ 14. Insight Global's counterclaims plead the following allegations regarding three individuals.

John McArthur was an Account Manager at Insight Global's San Francisco office. *Id.* ¶ 15. During his employment, McArthur "was exposed to significant confidential information including but not limited to actual and potential customer information and lists, customer preferences, billing rates, pricing practices, and contract expiration dates." *Id.* ¶ 16. Around December 21, 2016, he abruptly resigned his employment at Insight Global. *Id.* ¶ 19.

Connor Cronin was employed by Insight Global as a Professional Recruiter at its San Francisco office. *Id.* ¶ 21. Under his position, Cronin developed significant contacts with Insight Global's key clients. *Id.* ¶ 22. Around December 23, 2016, Cronin resigned from working at Insight Global. *Id.* ¶ 25.

Bryan Verduzco was a Sales Manager at Insight Global's San Francisco office. *Id.* ¶ 27. He was responsible for meeting with clients and prospective clients, and overseeing the solicitation of clients for new business. *Id.* ¶ 28. Verduzco abruptly resigned his employment at Insight Global around January 11, 2017. *Id.* ¶ 30.

McArthur, Cronin, and Verduzco were responsible for generating over $6 million in revenue for Insight Global last year. *Id.* ¶ 36. Insight Global alleges that Barker misused its

1 confidential information to solicit and cause the three employees to join Barker at the Competing

2 Staffing Business. *Id.* ¶¶ 20, 26, 31.

### B. Insight Global's First Amended Counterclaims

Defendant Insight Global asserts four counterclaims. The first counterclaim is breach of contract. *Id.* ¶¶ 37–44. Specifically, the FACC alleges that Barker breached sections 4 and 13 of the Employment Agreement by soliciting its former employees and failing to notify Insight Global of his new employment. *Id.* ¶¶ 42–43.

The second counterclaim is for intentional interference with prospective economic advantage. *Id.* ¶¶ 45–53. Under this claim, Insight Global seeks injunctive relief against Barker by enjoining him and his agents from "soliciting or providing services to any clients who were serviced by McArthur and Cronin while they were employed by Insight Global." *Id.* ¶ 53.

Under the third counterclaim, Insight Global asserts intentional interference with contractual relations. *Id.* ¶¶ 54–60. It seeks injunctive relief against Barker by enjoining him and his agents from "soliciting any Insight Global employees." *Id.* ¶¶ 60.

The fourth counterclaim alleges violations of California Business and Professions Code § 17200, Unfair Competition Law ("UCL"). *Id.* ¶¶ 61–67. For relief, Insight Global requests injunctive relief against Barker by enjoining him and his agents from "soliciting or providing services to any clients who was serviced by McArthur and Cronin while they were employed by Insight Global." *Id.* ¶ 67.

The second, third, and fourth counterclaims rely on the allegation that Barker misused "Insight Global's confidential information concerning employee salaries" in committing the asserted unlawful conduct. *Id.* ¶¶ 47, 57, 62. For the instant motion, Barker moves to dismiss the second, third, and fourth counterclaims. Mot. 6–9, ECF 42.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and

4

construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. Preemption by California Uniform Trade Secrets Act

Barker argues that the second, third, and fourth counterclaims are preempted by California Uniform Trade Secrets Act ("CUTSA"). Mot. 6–9. The second counterclaim for intentional interference with prospective economic advantage and the third counterclaim for intentional interference with contractual relations are based on Insight Global's allegation that Barker misused its confidential salary information to solicit its employees. FACC ¶¶ 47, 57. Barker contends that CUTSA preempts those intentional interference counterclaims because they are based on the same nucleus of facts of any trade secret misappropriation claims that Insight Global could have pled. Mot. 7. He also asserts that the fourth counterclaim under the UCL is preempted by CUTSA because that claim relies on the preempted second and third counterclaims. *Id.* at 9. Insight Global responds that it has not pled facts alleging that Barker used its trade secrets and thus CUTSA does not preempt the second, third, and fourth counterclaims. Opp'n 5–7, ECF 52.

"[T]o recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act." *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1145 (2004). Here, the parties dispute whether Barker's alleged misuse of Insight Global's confidential employee salary information, which has not been pled to be trade secrets, constitutes an "independently wrongful act." If CUTSA preempts such misappropriation of non-trade secret information, then Barker's alleged misuse of confidential information cannot constitute an independently wrongful act that supports Insight Global's interference counterclaims.

"CUTSA provides the exclusive civil remedy for conduct failing within its terms, so as to supersede other civil remedies based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (Cal. Ct. App. 2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). While CUTSA does not preempt

5

contractual remedies, it preempts "claims based on the same nucleus of facts as the misappropriation of trade secrets claim." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (Cal. Ct. App. 2009). This includes misappropriation of information that does not fall under the definition of trade secret and "is not otherwise made property by some provision of positive law." *Silvaco*, 184 Cal. App. 4th at 239 n.22.

After *Silvaco*, the majority of district courts have held that "CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA." *See, e.g.*, *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694, 2012 WL 6160472, at *5–9 (N.D. Cal. Dec. 11, 2012); *Artec Grp., Inc. v. Klimov*, No. 15-CV-03449, 2016 WL 7157635, at *7 (N.D. Cal. Dec. 8, 2016), *amended*, No. 15-CV-03449, 2016 WL 8223346 (N.D. Cal. Dec. 22, 2016); *Total Recall Techs. v. Luckey*, No. C 15-02281, 2016 WL 199796, at *7 (N.D. Cal. Jan. 16, 2016); *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798, 2015 WL 5158461, at *2–3 (N.D. Cal. Sept. 2, 2015); *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 840 (N.D. Cal. 2014); *Heller v. Cepia, L.L.C.*, 11-01146, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012); *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 986–87 (C.D. Cal. Jan. 5, 2011). Although a few courts have held otherwise, most of the contrary decisions were issued before the California Court of Appeal's *Silvaco* decision or failed to review *Silvaco* at all. *See SunPower*, 2012 WL 6160472, at *7.

After reviewing the numerous cases discussing this issue, the Court follows the majority of courts that hold that CUTSA preempts common law claims based on the misappropriation of non-trade secrets except where a provision of positive law grants a property right in that information. Without contrary authority, it is prudent to follow *Silvaco*'s statement that the "prime purpose of CUTSA was to . . . [adopt] a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value'" and that non-trade secret information "belongs to no one" unless made property by some positive law. *Silvaco*, 184 Cal. App. 4th at 239 n.22; *see also SunPower*, 2012 WL 6160472, at *5. Insight Global has not pointed to any decision that suggests the California Supreme Court would overrule that aspect of *Silvaco*.

6

Instead, Insight Global attempts to distinguish the majority of cases following *Silvaco* on the ground that most of those cases involved a separately pled trade secret claim in addition to a non-trade secret claim. Opp'n 6; Oral Arg. Tr. 39:8–21; 45:11–13. In other words, Insight Global argues that a non-trade secret claim is preempted only when the plaintiff pleads a trade secret claim. However, there is no reason why preemption turns on and off depending on whether a trade secret claim is actually pled. Such a rule would "defeat preemption by allowing plaintiffs to intentionally omit CUTSA claims in favor of other claims." *NetApp*, 41 F. Supp. 3d at 840.

Insight Global also argues that Barker's alleged misuse of its salary information constitutes a breach of fiduciary duty that supports a claim not preempted by CUTSA. Opp'n 7. Citing *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327 (1966) for support, Insight Global asserts that "misuse of salary information, regardless of whether [the information] is 'confidential'" amounts to a breach of fiduciary duty. Opp'n 7. Hence, Insight Global argues, because its misuse allegation does not depend on whether the salary information is confidential, its interference claims have nothing to do with CUTSA. *Id.* The Court is unpersuaded by Insight Global's argument as discussed below.

In *Bancroft-Whitney*, a corporate officer *without resigning* from his employer signed an employment contract with a competitor. 64 Cal. 2d at 330. While continuing his employment, the officer used inside knowledge and confidential business information to recruit his colleagues to join the competitor. *Id.* at 331. During this process, he affirmatively misled his employer by giving assurance that the competitor was not attempting to "raid" on the employer's staff. *Id.* at 348–49. Against this backdrop, *Bancroft-Whitney* held that the officer breached his fiduciary duty to his employer. *Id.* at 345–54.

As Insight Global points out, *Bancroft-Whitney* opined that the officer breached his fiduciary duty when "he supplie[d] the competitor with a selective list of the corporation's employees . . . together with the salary the corporation [was] paying the employee and a suggestion as to the salary the competitor should offer in order to be successful in recruitment." *Id.* at 350–51. The court stated that this conclusion did not change even if the salary "information . . . [was] not deemed confidential." *Id.* at 351. This statement, however, appears to be dicta

7

because the court concluded that the salary information at issue was in fact "confidential information." *Id.* Hence, the Court is unconvinced by Insight Global's reliance on *Bancroft-Whitney* to argue that its misuse of information allegation does not turn on whether the information is confidential and thus its claim has nothing to do with CUTSA.

Even if the Court were to conclude that the statement regarding non-confidential information is not dicta, *Bancroft-Whitney* only holds that disclosing such information may constitute a breach of fiduciary duty *when the employee is continuing* his employment with that employer. Indeed, in assessing the allegations regarding the officer's solicitation of his colleagues, *Bancroft-Whitney* indicated that a breach of fiduciary duty is not implicated in cases where an officer resigned and then solicited his former colleagues. *Id.* at 353–54; *see also Robert Half Int'l, Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1191 (S.D. Cal. 2014) (holding that *Bancroft-Whitney* applies to situations where officers share their employer's information with competitors while currently working for the employer). Here, in contrast to *Bancroft-Whitney*, Insight Global does not allege that Barker misused its salary information while he was employed at Insight Global. Hence, Insight Global cannot rely on *Bancroft-Whitney* to support its assertion that its counterclaims have nothing to do with CUTSA on the ground that "misuse of salary information" amounts to a breach of fiduciary duty regardless of whether the information is confidential.

To be sure, *Bancroft-Whitney* held that the officer breached his fiduciary duty by disclosing confidential information under the circumstances. And Insight Global alleges that Barker misused its confidential salary information. This allegation, however, does not change the above conclusion that Insight Global's reliance on *Bancroft-Whitney* is not justified. Importantly, *Bancroft-Whitney* was decided in 1966 before CUTSA was adopted. Courts have not directly addressed whether CUTSA supersedes *Bancroft-Whitney*'s ruling on the issue of a breach of fiduciary duty based on misappropriation of confidential information. However, CUTSA makes clear that common law claims are superseded except when they fall outside CUTSA's reach.[1] As

---

[1] CUTSA does not affect "(1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b).

8

explained above, the majority of courts have generally held that CUTSA preempts common law claims involving misappropriation of non-trade secrets that were not made property by some provision of positive law. *Silvaco*, 184 Cal. App. 4th at 239 n.22. Hence, courts have held that CUTSA preempts common law claims including conversion, breach of confidence, interference, unfair competition claims based on the misuse of non-trade secrets information. *See, e.g.*, *SunPower*, 2012 WL 6160472, at *13; *K.C. Multimedia*, 171 Cal. App. 4th at 960.

The Court finds no reason to treat breach of fiduciary duty claims differently from other preempted common law claims. Permitting what Insight Global seeks would circumvent CUTSA's purpose of providing a "uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value.'" *Silvaco*, 184 Cal.App.4th at 239 n. 22. Indeed, courts have dismissed fiduciary duty claims as being superseded by CUTSA. *See, e.g.*, *Mattel*, 782 F. Supp. 2d at 986 ("It's no longer the case in California that a claim for breach of fiduciary or breach of duty of loyalty based upon the misappropriation of trade secrets would survive even though both claims require proof of 'additional elements' like a relationship of trust or confidence."). As such, the Court rejects Insight Global's argument that Barker's alleged misuse of its confidential salary information amounts to a breach of fiduciary duty claim that is not preempted by CUTSA.

Insight Global does not allege that it has any other property interest in the allegedly misused confidential information. Therefore, Insight Global's second, third, and fourth counterclaims which rely on Barker's alleged misuse of confidential information is preempted by CUTSA. *See Total Recall*, 2016 WL 199796, at *8 (holding that any claims relying on the alleged misappropriation of confidential information were superseded by CUTSA).

**B.     Whether Determining CUTSA Preemption is Premature**

Insight Global argues that courts have declined to find CUTSA preemption at the pleading stage because discovery may produce information on whether the alleged confidential information may constitute trade secrets. Opp'n 8. However, its argument is premised on the proposition that CUTSA does not preempt misappropriation of non-trade secrets, which the Court has rejected

1  above. In fact, for support, Insight Global relies on three cases,[2] which are contrary to decisions of

2  the majority of courts on this issue. *See SunPower*, 2012 WL 6160472, at *7. As discussed

3  above, the Court declines to follow those contrary cases and instead holds that CUTSA preempts

4  claims based on misappropriation of non-trade secrets except where a provision of positive law

5  grants a property right in that information. Therefore, the Court rejects Insight Global's argument

6  that determining CUTSA preemption is premature at this juncture.

### C. Barker's Purported Breach of Non-Solicitation Obligation

The remaining dispute is whether Barker's alleged breach of contract (i.e., soliciting Insight Global's employees to terminate their employment with Insight Global) can serve as an independently wrongful act to support Insight Global's intentional interference counterclaims. Courts have held that if the only identified wrongful conduct is the breach of contract between the plaintiff and defendant, that conduct does not support a claim of interference with the relationship between the defendant and third-parties. *Quantum Assocs., Inc. v. Symbol Techs., Inc.*, No. C 01-02789, 2002 WL 1735356, at *1 (N.D. Cal. July 12, 2002). Here, Insight Global admits that its interference counterclaims rely on Barker's purported breach of his non-solicitation obligation. Opp'n 11. It does not identify any other wrongful act. Therefore, the Court concludes that Insight Global cannot rely on Barker's purported breach of the non-solicitation agreement and that it has not pled any independently wrongful act to support its intentional interference counterclaims.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Barker' motion to dismiss the second, third, and fourth counterclaims as being preempted by CUTSA with LEAVE TO AMEND. This does not mean that Insight Global is without remedy. During oral argument, Insight Global requested an opportunity to amend the first counterclaim to further allege breach of contract based on misuse of confidential information. The Court GRANTS Insight Global's request. Moreover, Insight Global may amend the dismissed counterclaims or add a misappropriation of trade secrets claim if

---

[2] Insight Global cites: *Leatt Corp. v. Innovative Safety Tech., LLC*, No. 09-CV-1301, 2010 WL 2803947 (S.D. Cal. July 15, 2010); *Phoenix Techs. Ltd. v. DeviceVM*, No. C 09-04697, 2009 WL 4723400 (N.D. Cal. Dec. 8, 2009); *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929 (N.D. Cal. 2008).

it has a factual basis to allege such a claim. Insight Global may file its second amended counterclaims **within twenty-one (21) days** of the date of this order.

**IT IS SO ORDERED.**

Dated: November 21, 2017

_____
BETH LABSON FREEMAN
United States District Judge