United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN BARKER,<br><br>    Plaintiff,<br><br>v.<br><br>INSIGHT GLOBAL, LLC, et al.,<br><br>    Defendants. | Case No. 5:16-cv-07186-BLF (HRL)<br><br>**ORDER RE DISCOVERY DISPUTE JOINT REPORTS 9 AND 10**<br><br>Re: Dkt. Nos. 132, 133, 142 |

Before the court are Discovery Dispute Joint Reports ("DDJRs") 9 and 10. The court will address DDJR 10 first.

## **DDJR 10**

In DDJR 10, plaintiff Barker seeks an order requiring Insight Global ("Insight") to produce the performance metrics for years 2015 and 2016 of Insight's 40 other offices. Insight has already produced what it says are the metrics for its San Francisco office, where Barker was working at the time of his termination. Barker wants the same data from the other offices so that he can compare it with San Francisco's. That is important to Barker because he believes he was falsely told by his Regional Manager that the San Francisco office (where Barker was in charge) compared poorly against the other Insight offices, a comparison to which Barker took umbrage, and which may have lead him, in his agitation, to speak harshly to his boss. Barker was

terminated the next day for "insubordination." Plaintiff further claims that the insubordination label was trumped up to justify Insight treating the termination as one "for cause," and thereby deny him his deferred compensation under Insight's Incentive Unit Plan ("IUP"). Barker needs this information before resuming the deposition of Insight's 30(b)(6) witness about the IUP Plan.

Insight represents that it did produce documents showing the performance metrics for the San Francisco office, including the "quarterly e-mail numbers" that had been identified by Insight witnesses in deposition and had been specifically called for by plaintiff. Plaintiff says he has not received the quarterly e-mail numbers, and the court's own review *in camera* of the documents did not reveal anything that clearly fit that description.

As for the performance metrics of its other offices, Insight says those numbers are irrelevant because Barker was not terminated for poor performance compared to other offices, but for insubordination. That could be correct as far as it goes, but it does not entirely close the door to inquiry into what precipitated Barker's outburst (if that is what happened). Such an inquiry is not without some factual basis in the record, since the San Francisco documents do indicate that at least one metric that was supposedly held up to Barker as an indicator of poor performance had, according to one of the documents, actually been achieved.

In short, the performance metrics of Insight's other offices do have relevance, if the court were to consider the context behind the "insubordination" rationale adopted by Insight and its IUP Committee to withhold Barker's accrued compensation.[1]

Insight argues strenuously that performance metrics of its other offices are highly sensitive, and even an Attorneys' Eyes Only ("AEO") designation under the Protective Order would be insufficient safeguard against Barker getting hold of the information identifying the "high performing markets or successful employees" and embarking on a further campaign to recruit away Insight employees. This argument does not persuade. There is nothing in the San Francisco office's metric documents the court has seen that identify any employee. There is no reason to believe Barker himself will have access to AEO information. The court believes the existing

---

[1] This evidence could be relevant under plaintiff's third claim for relief, even if neither his fourth or fifth claims is successfully revived by amendment. (Dkt. 143).

2

Protective Order is sufficient to protect the information.

Within 20 calendar days from the date of filing this order, Insight shall produce its performance metrics for all offices and any document that ranks or compares the performance of the offices for 2015 and 2016. Likewise, it shall remove the redactions on documents: "Insight – 026991 through 026996." Finally, it shall produce the "quarterly e-mail numbers" and identify them as such.

**DDJR 9**

In DDJR 9, Insight asks the court to order, for a date certain, the deposition of Beacon Hill executive Jeff McLaren. Earlier in this litigation, Barker had asked this court to delay (or stay) McLaren's deposition because it may not be necessary depending on the outcome of a then-pending motion for judgment on the pleadings. Insight was not agreeable to waiting and filed DDJR 6. The court agreed with Insight and ordered that the deposition may go forward. That was months ago, and Insight complains mightily in DDJR 9 that, despite its many efforts to bring it about, Barker has stubbornly refused to produce McLaren.

The delay in obtaining McLaren's deposition is more complicated than the straightforward telling in the previous paragraph. Previously, Barker's lawyer had traveled to the east coast (Atlanta) to take the deposition of Insight's 30(b)(6) witness. That deposition did not conclude because there were some topics about which the witness was unable to testify, necessitating a future second trip across country for Barker's counsel to finish up that deposition with a different witness. Since McLaren's deposition would be in Boston and the 30(b)(6) follow-up deposition would be in Atlanta, both sides agreed that these depositions would be taken concurrently during the same eastern trip. They even agreed on dates: McLaren on October 20, to be followed a day or so later by the 30(b)(6) deposition wrap-up in Atlanta.

The agreement between counsel went cross-wise because, according to Barker, he could not complete the 30(b)(6) deposition until Insight produced certain documents (dealing with performance metrics). Insight produced some material but balked at the scope of what plaintiff wanted and claimed the additional material was not necessary nor germane to the remaining 30(b)(6) topics. Barker insisted to the contrary. Barker did not want to go east for McLaren's

deposition without combining it with the Atlanta deposition, and he would not take the Atlanta deposition without the additional documents in hand.  So, he declined to produce McLaren on October 20 and sought a protective order from this court (which issued a stay until it could sort things out).  In a tiresome exchange of dueling recriminations, each side blames the other for the failure to get the depositions taken.  (It is unfortunate that each side seems to view the other side's conduct through a lens which reveals only deviousness and improper motive.)[2]

Now that the court has sorted out the document production issue (DDJR 10), the McLaren and the 30(b)(6) deposition shall take place concurrently within 30 calendar days after Insight complies with the court's ruling on DDJR 10.  If either side appeals from this order, compliance is stayed until the appeal is resolved.

SO ORDERED.

Dated:   December 1, 2017

HOWARD R. LLOYD
United States Magistrate Judge

---

[2] Insight's Administrative Motion to file declarations is denied, except for the attached transcript of a Rule 16 Scheduling Conference in a Colorado case, *Insight Global, LLC v. Mary McDonald and Beacon Hill Staffing Group, LLC*, 17- cv-01915.  The court has read and considered that transcript, but did not find it instructive with respect to the deposition scheduling issue before it here.

4