# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JOHN BARKER,<br><br>    Plaintiff,<br><br>v.<br><br>INSIGHT GLOBAL, LLC, et al.,<br><br>    Defendants. | Case No. 16-cv-07186-BLF<br><br>**ORDER DENYING DEFENDANTS' PARTIAL MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>[Re: ECF 181] |

Before the Court is Defendants' Partial Motion to Dismiss Fourth Amended Complaint ("Motion"). Motion, ECF 181. Specifically, Defendants move to dismiss Count I of the Fourth Amended Complaint ("4AC") for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) or in the alternative for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); and to dismiss Count III of the 4AC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* Motion at 1. The Court previously ruled that Defendants' Motion would be determined without oral argument. *See* ECF 185. For the reasons set forth below, the Court hereby DENIES Defendants' Partial Motion to Dismiss Fourth Amended Complaint.

## I. BACKGROUND

Plaintiff John Barker ("Plaintiff" or "Barker") brings this action against his former employer Insight Global, LLC ("Insight Global") and Insight Global's employee benefit plan, Second Amended and Restated Insight Global, LLC 2013 Incentive Unit Plan (the "Plan") (collectively, "Defendants"). Barker asserts that Insight Global enforces an unlawful employment agreement, denied him benefits under the employee benefit plan, and wrongfully deprived him of his employment benefits upon termination. Insight Global is a company that provides staffing services in the information technology, finance, accounting, engineering and government

industries. 4AC ¶ 3, ECF 180. Barker worked for Insight Global from March 13, 2006 to October 26, 2016, when Insight Global abruptly terminated his employment. *Id.* ¶ 5. From September 2009 to October 26, 2016, Barker worked as an Account Manager, Sales Manager and Director of Operations at Insight Global's San Jose and San Francisco, California offices. *Id.*

### A. The Parties' At-Will Employment Agreement

Insight Global and Barker executed several versions of an At-Will Employment Agreement. 4AC ¶ 11. According to the 4AC, the November 17, 2015 At-Will Employment Agreement, which is the most recent version, contains several allegedly unlawful provisions. *Id.* ¶¶ 11–15. The 4AC alleges that the At-Will Employment Agreement contains an "Agreement Not to Solicit Customers and Clients" provision that prohibits Barker from soliciting customers for one year after the termination of his employment with Insight Global. *Id.* ¶ 12. Specifically, paragraph 5 of the At-Will Employment Agreement provides the following "non-solicitation of customers" provision:

> 5. AGREEMENT NOT TO SOLICIT CUSTOMERS AND CLIENTS. Except when acting for and on behalf of Employer, Employee agrees that, during the Restricted Period, Employee shall not directly or indirectly solicit, or attempt to solicit, on behalf of any Competing Staffing Business . . . any actual or prospective customer or client of Employer (a) regarding whom Employee was responsible for collecting, compiling, or recording Confidential Business Information or Trade Secrets for Employer, or (b) about whom Employee received Confidential Business Information or Trade Secrets as a result of Employee's employment with Employer.

Ex. 1 to 4AC ("At-Will Employment Agreement"), ECF 180.

### B. The Second Amended and Restated Insight Global, LLC 2013 Incentive Unit Plan

Around January 2013, Insight Global and Barker executed the Second Amended and Restated Insight Global, LLC 2013 Incentive Unit Plan, which provides deferred compensation payable after the termination of Barker's employment. 4AC ¶ 16. The amount of compensation is in "Units" of value accumulated over the course of employment. *Id.* The Plan requires that an employee forfeit all Units if the Plan's Board determines that the individual's employment was terminated for "cause." *Id.* ¶ 17. According to the 4AC, the Plan conditions payment on compliance with several non-compete and non-solicitation provisions that are unlawful in

California. *Id.* ¶ 18. The Plan also contains a severability provision, which states that the non-compete and non-solicitation provisions do not apply to employees who are residents of California at the time of termination of their employment. *Id.* ¶ 19.

### C. Termination of Barker's Employment at Insight Global

On October 26, 2016, Insight Global terminated Barker's employment without explanation. 4AC ¶ 21. Insight Global's General Counsel and Secretary, David C. Lowance, Jr., sent a letter to Barker, stating that "I regret to inform you that we consider your termination to be for 'cause.'" *Id.* The termination letter also "reminded" Barker of his purported obligations "not to (1) compete against Insight Global in its lines of business within certain geographic areas, (2) solicit any of the customers or prospective customers with whom [he] had material contact while at Insight Global." *Id.* ¶ 23; *see also* Ex. 3 To 4AC ("Termination Letter"), ECF 180. According to the 4AC, Insight Global falsely claimed "for 'cause'" termination to deprive Barker of his earned deferred compensation under the Plan that amounts to about $344,304. 4AC ¶ 21. Insight Global further threatened legal action or forfeiture of benefits under the Plan. *Id.* ¶ 23.

### D. Barker's Claims Relevant to the Instant Motion

Plaintiff's 4AC includes six causes of action; Count I is an Unfair Competition claim under Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL claim"); Count III seeks relief for purported violation of § 510 of the Employee Retirement Income Security Act ("ERISA"), which is codified as 29 U.S.C. § 1440. *See* 4AC ¶¶ 38–43, 50–56.

Count I—Plaintiff's UCL claim—is brought on behalf of a putative class against Insight Global based on allegedly unlawful non-solicitation of customers provisions in employment agreements and/or offer letters. 4AC ¶¶ 38–43. The class is defined as follows:

> All persons employed at any time by Insight [Global] in California during the period from December 15, 2012 to the present who signed an employment agreement with Insight [Global] or received an offer letter from Insight [Global] that contained a non-solicitation of customers provision.

*Id.* ¶ 29.

Count III—Plaintiff's ERISA claim—is brought on behalf of Plaintiff only. *Id.* ¶¶ 50–56.

Plaintiff's Third Amended Complaint ("TAC") contained these same two causes of

action.[1] *See* TAC ¶¶ 49–53, 60–63, ECF 162. In the TAC, Plaintiff's UCL claim was also brought on behalf of a putative class, but concerned allegedly unlawful non-solicitation provisions with respect to both customers *and* employees. TAC ¶¶ 49–53. In the TAC, like the 4AC, Plaintiff's ERISA claim was brought on behalf of Plaintiff only. TAC ¶¶ 60–63.

Defendants previously moved to dismiss Plaintiff's UCL claim and ERISA claim in the TAC on the same grounds upon which Defendants bring the instant motion. *See generally* Defendants' Partial Motion to Dismiss Third Amended Complaint, ECF 164. The Court dismissed Plaintiff's UCL claim with respect to the non-solicitation of employees provision without leave to amend[2]; the Court dismissed Plaintiff's UCL claim with respect to the non-solicitation of customers provision for lack of standing with leave to amend; the Court dismissed Plaintiff's ERISA claim for failure to state a claim with leave to amend. See Order Granting with Leave to Amend in Part and Without Leave to Amend in Part and Denying in Part Defendants' Motion to Dismiss ("TAC Order"). TAC Order at 17–18, ECF 176.

Plaintiff subsequently filed a fourth amended complaint amending his UCL claim and ERISA claim, *see* ECF 180, and the instant Motion followed, *see* ECF 181. The Court notes that unlike Plaintiff's UCL claim in the TAC that requested both injunctive relief and restitution, *see* TAC ¶ 53, Plaintiff's UCL claim in the 4AC requests only "restitution of Insight[] [Global's] ill-gotten gain," *see* 4AC ¶ 43.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). If the plaintiff lacks Article III standing to assert a claim, then the court lacks subject matter jurisdiction, and the claim must be dismissed. *See Steel*

---

[1] Counts II and IV, respectively, of Plaintiff's TAC.

[2] Plaintiff has since filed a Motion for Reconsideration of the Court's order dismissing this portion of Plaintiff's UCL claim without leave to amend, due to what Plaintiff contends is an intervening change in the law. *See* ECF 189. Briefing has yet to be completed and Plaintiff's Motion for Reconsideration remains pending. In the Court's view the instant motion is not affected by Plaintiff's Motion for Reconsideration or *AMN Healthcare, Inc. v. Aya Healthcare Services, Inc.*, 28 Cal. App. 5th 923 (Ct. App. 2018), the primary case cited therein; nor have the parties indicated that *AMN* affects analysis of the instant motion.

4

*Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

### B. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

### A. First Claim: Violation of California's Unfair Competition Law Based on the Non-Solicitation of Customers Provisions

Under the 4AC's first claim, Plaintiff asserts violation of California Business and Professions Code §§ 17200 *et seq.*, the Unfair Competition Law ("UCL"), based on the non-solicitation of customers provisions. 4AC ¶¶ 38–43. Defendants move to dismiss the first claim of Plaintiff's 4AC on either or both of two grounds: lack of standing and hence lack of subject matter jurisdiction pursuant to Rule 12(b)(1); and failure to state a claim pursuant to Rule 12(b)(6). *See* Motion at 1, ECF 181.

The Court notes Plaintiff's argument that the non-solicitation of customers provision in Plaintiff's At-Will Employment Agreement is "facially unlawful and void." Opp'n at 1, ECF 183. However, while Defendants assert the opposite in their Motion—"that the non-solicitation

5

provision is facially valid"—Defendants go on to state they are "[not] mak[ing] that argument at this stage of the proceedings." *See* Motion at 6 n.4. Moreover, even if the non-solicitation of customers provision is unlawful, this would not necessarily mean that Plaintiff has standing to pursue his UCL claim. Accordingly, the Court need not and does not address the facial validity or invalidity of the provision, but only Defendants' Rule 12(b)(1) and Rule 12(b)(6) arguments, respectively, as set forth in Defendants' Motion.

### 1. Motion to Dismiss Plaintiff's UCL claim under Rule 12(b)(1)

A plaintiff asserting a UCL claim must satisfy both Article III and the UCL standing requirements. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009). To have standing to assert a UCL claim, the plaintiff must show that "she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203–04 (9th Cir. 2010). Thus, the plaintiff asserting a UCL claim must have Article III standing in the form of economic injury. *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 991 (E.D. Cal. 2012).

In the Court's TAC Order, the Court found that Plaintiff's TAC insufficiently pled that Plaintiff had lost "money or property" as required under the UCL to establish standing, but granted Plaintiff leave to amend. *See* TAC Order at 11, 17, ECF 176. In the instant motion, Defendants argue that Plaintiff's 4AC is likewise insufficient, because "Barker fails to plead anything more than conclusory allegations regarding the economic injury he claims to have sustained." Motion at 5. Specifically, Defendants argue that Plaintiff merely alleges "that Section 5 of his Employment Agreement prevents him and – allegedly – other current and former Insight Global employees from working for one of Insight Global's competitors in the staffing industry." *Id.* (citing 4AC ¶¶ 38–43). On the other hand, Plaintiff asserts that the 4AC pleads "economic injury in the years *prior to* his abrupt and unlawful termination" caused by the non-solicitation of customers provision in his employment agreement sufficient to satisfy the UCL's standing requirement. *See* Opp'n at 2 (emphasis in original).

Having reviewed Plaintiff's 4AC in detail, the Court finds it a close call on the standing issue. Plaintiff has added precisely one paragraph to his UCL claim. *See* 4AC ¶ 42. This content

6

includes (1) allegations that the non-solicitation of customers provision "prevented [Plaintiff] from terminating his employment with Insight [Global] earlier and seeking employment with a competitor or forming a competing business"; (2) that the provision "place[d] a substantial segment of the market off limits to [Plaintiff]"; (3) that job opportunities sought by Plaintiff outside the staffing industry "offered lower compensation than opportunities in the staffing industry"; and (4) that potential staffing industry employers "would only hire him if he agreed to relocate and work out-of-state" due to concerns over the provision. *Id.* While these newly pled allegations appear thin, the Court is mindful that "[t]here are innumerable ways in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (Cal. 2011) (cataloguing some of the various forms of economic injury sufficient for UCL standing purposes).

Here, although Plaintiff's allegations of economic injury do not fit neatly into a pre-defined category, the Court nonetheless finds the allegations in Plaintiff's 4AC are sufficient to confer UCL standing. Plaintiff's 4AC essentially pleads that his career trajectory was altered by inclusion of the non-solicitation of customers provision in his employment agreement—that the provision "prevented [him] from . . . seeking employment with a competitor" and that certain in-state jobs in his industry were unavailable to him due to "Insight[] [Global's] restrictive covenants." 4AC ¶ 42. He alleges that he sought jobs in California in other industries, but they paid less, and applied for jobs with competitors but was only offered jobs out of state due to the non-solicitation provision. *See id.*; *see also Spanish Broadcasting System, Inc. v. Grupo Radio Centro LA, LLC*, 2016 WL 9049646, at *5 (C.D. Cal. Sept. 22, 2016) (suggesting that an employee suffers economic harm in the context of UCL standing when prevented "from engaging in their lawful occupation with competitors") (internal quotation and citation omitted).

In *Spanish*, a radio station operator counterclaimed against competitor stations for UCL violations based on the competitor stations' use of allegedly unlawful employment contracts. *Id.* at *2. Here, Barker is similarly situated to the employees[3] of the competitor stations. The Court

---

[3] Although in *Spanish* the operator's counterclaim was dismissed for lack of standing (as pointed out by Defendants' in their Reply brief at 4, ECF 184), standing based on economic harm to the

7

in *Spanish* noted that allegedly unlawful employment contracts coupled with the allegation that the contracts "imprison[ed] broadcasting talent and support employees within the walls of [the competitor stations]" suggested economic harm to the employees. *Id.* at *4–5 (internal quotation and citation omitted). Like the employees in *Spanish*, Barker's employment agreement allegedly prevented Barker from utilizing his talents in the staffing industry except for Insight Global, *see* 4AC ¶ 42. Thus, the factual matter in the 4AC, accepted as true, *see Iqbal*, 556 U.S. at 678, supports the inference that Barker suffered economic harm due to[4] suppressed wages resulting from inclusion of the non-solicitation of customers provision in Barker's employment agreement that reduced market demand for Barker's services or limited his ability to freely change jobs in search of a higher-earning career path.

While the Court has carefully considered Defendants' argument that Barker has not specifically demonstrated any lost "money or property" despite multiple attempts, *see* Motion at 5–6; Reply at 1–3, Defendants' interpretation of UCL standing law is overly narrow. As stated by the California Supreme Court, the UCL's "overarching legislative concern [was] to provide a streamlined procedure for the prevention of ongoing or threated acts of unfair competition," through which "private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (Cal. 2003). Here, the Court finds that Barker's allegations in the 4AC fall within the sphere of economic injury contemplated by the UCL. Accordingly, Defendants' motion to dismiss Count I of the 4AC for lack of standing and subject matter jurisdiction is DENIED.

### 2. Motion to Dismiss Plaintiff's UCL claim under Rule 12(b)(6)

Defendants additionally move to dismiss Plaintiff's UCL claim under Rule 12(b)(6) for failure to state a claim. Motion at 6. Defendants argue (1) that "[t]he 4AC is noticeably void of any allegations that Barker suffered any economic injury as a result of the non-solicitation of customers provision"; and (2) that "[t]he supposed 'restitution' Barker seeks . . . is not recoverable

---

employees was not available to the operator because the employees were not parties to the action. *See Spanish*, 2016 WL 9049646, at *4–5. Moreover, the operator was granted leave to amend its standing argument. *Id.* at *5.
[4] For example only and not as an exhaustive list.

8

under the UCL." *See* Motion at 6–7; Reply at 2. Plaintiff counters that "Mr. Barker is a direct victim of Insight[] [Global's] unlawful practices" and he has adequately "articulated" and "pled" his injury. Opp'n at 8.

The Court finds Defendants' arguments unpersuasive. First, Defendants' argument that the 4AC is void of allegations of economic injury fails for the same reasons articulated in Section III.A.1 *supra* with respect to standing. Second, Plaintiff has stated a plausible UCL claim with restitution as the requested remedy. *See* 4AC ¶¶ 42–43. Defendants are correct that compensatory damages are not available under the UCL—"in the case of all private plaintiffs, the [UCL] plainly authorizes only injunctive relief and restitution." *E.W. French & Sons, Inc. v. General Portland Inc.*, 885 F.2d 1392, 1402 (9th Cir. 1989). Here, Barker seeks only restitution.[5] 4AC ¶ 43 ("[T]he class members seek full restitution of Insight[] [Global's] ill-gotten gains."). Defendants argue that Plaintiff is seeking "lost income" or "lost business opportunity," i.e. compensatory damages not available under the UCL. *See* Reply at 2. Indeed, Plaintiff does allege lost business opportunities. *See* 4AC ¶ 42. However, "[s]tanding and the calculation of restitution [under the UCL] have different standards." *Chowning v. Kohl's Department Stores, Inc.*, 2018 WL 3016908, at *2 (9th Cir. June 18, 2018) (citing *Kwikset*, 51 Cal. 4th at 335). In other words, the standing inquiry and restitution inquiry are distinct. "Restitution under section 17203 is confined to restoration of any interest in money or property, real or personal, which may have been acquired by means of such unfair competition." *Kwikset*, 51 Cal. 4th at 336 (emphasis removed) (internal quotation omitted).

Here, Plaintiff's factual allegations, accepted as true, support the inference that Plaintiff seeks restitution for[6] what Defendants in effect acquired by paying Plaintiff suppressed compensation compared to what Defendants would have paid for Plaintiff's services had the non-solicitation of customers provision not been included in Plaintiff's employment agreement. *See* 4AC ¶¶ 42–43. Thus, by a thin margin, Plaintiff has done just enough to "nudge[] [his] claim[]

---

[5] The Court previously dismissed Barker's claim for injunctive relief under the UCL with respect to the non-solicitation of customers provision without leave to amend. *See* TAC Order at 9, ECF 176.
[6] By way of example only, and not as an exhaustive list.

9

across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Accordingly, Defendants' motion to dismiss Count I of the 4AC for failure to state a claim is DENIED.

### B. Third Claim: Interference with Right Under ERISA Plan (29 U.S.C. § 1140)

Under the 4AC's third claim, Barker seeks relief for Insight Global's purported violation of § 510 of ERISA, which is codified as 29 U.S.C. § 1440. 4AC ¶¶ 50–56. Section 510 of ERISA provides that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan[] . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[] . . . .

29 U.S.C. § 1140. The 4AC alleges that Insight Global terminated Barker's employment and falsely claimed that the termination was for "cause" with the specific intent to unfairly interfere with Barker's right to receive "payment of the units of value accumulated over the course of his employment" under the Plan. 4AC ¶ 55. Defendants move to dismiss the third claim of Plaintiff's 4AC for failure to state a claim pursuant to Rule 12(b)(6). *See* Motion at 1.

To recover under § 510, Barker "must show that [his] employment was terminated because of a specific intent to interfere with ERISA rights." *Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990). In the Court's TAC Order, the Court found that the TAC "alleges only in conclusory fashion that Insight Global terminated Barker's employment with the 'specific intent' to interfere with Barker's rights to receive benefits under the Plan," such that "the TAC does not sufficiently plead Barker's [ERISA] claim." *See* TAC Order at 16, ECF 176. Defendants argue that Barker's 4AC fares no better because "Barker has not amended his complaint to include facts that, if proved, would establish . . . a specific intent to interfere with his rights under Insight Global's ERISA Plan." Motion at 8, ECF 181. Plaintiff argues that to the contrary, the 4AC "pleads, in detail, facts in support of his allegation that Insight [Global] terminated Mr. Barker's employment . . . with the specific intent to[] unfairly interfere with Mr. Barker's right to receive payment . . . under the [] Plan." Opp'n at 9, ECF 183.

The Court agrees with Plaintiff. Unlike the TAC, the Court finds that Plaintiff's

4AC contains sufficient factual allegations that his employment was terminated with "specific intent" to interfere with his ERISA rights, *see Dytrt*, 921 F.2d at 896, to survive a motion to dismiss for failure to state a claim. For example (and not as an exhaustive list), the 4AC newly pleads that "[t]he Insight Compensation Committee, working in concert with Insight [Global], conducted a pre-ordained 'review' of Mr. Barker's claim for benefits, and employed multiple (false) excuses to deprive Mr. Barker of his earned deferred compensation, including [] his alleged termination for 'cause.'" 4AC ¶ 52. Plaintiff alleges that despite his At-Will Employment Agreement permitting termination "with or without cause," Defendants nonetheless "abruptly terminated" his employment for cause specifically "to deny Mr. Barker his accrued benefits under the [] Plan." *Id.* Plaintiff further alleges that he was provided no "warning or explanation" of his "for cause" termination and that the Plan provided that "if Insight [Global] terminated Mr. Barker's employment 'for cause,' Mr. Barker would forfeit his benefits under the [] Plan." *Id.*

In their Reply brief, Defendants argue that Plaintiff's 4AC is insufficient because it lacks an allegation "that Matt Gonsalves (Barker's boss) intended to deprive Barker of ERISA rights when he made the termination decision." Reply at 5, ECF 184. The Court is unpersuaded. The factual matter in the 4AC, accepted as true, *see Iqbal*, 556 U.S. at 678, supports the inference that Plaintiff's employment was terminated for "cause" precisely in order to allow Insight Global to deny Plaintiff benefits accrued under the Plan. Accordingly, Defendants' motion to dismiss Count III of the 4AC for failure to state claim is DENIED.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss Fourth Amended Complaint at ECF 181 is DENIED.

**IT IS SO ORDERED.**

Dated: December 5, 2018

BETH LABSON FREEMAN
United States District Judge

11