UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN BARKER,<br><br>  Plaintiff,<br><br>v.<br><br>INSIGHT GLOBAL, LLC, et al.,<br><br>  Defendants. | Case No. 16-cv-07186-BLF (VKD)<br><br>**ORDER RE RULE 30(B)(6) DEPOSITION OF INSIGHT GLOBAL**<br><br>Re: Dkt. Nos. 230, 239 |

As directed by the Court, Mr. Barker and Beacon Hill have made a supplemental submission in support of their request for an order requiring Insight Global to produce a Rule 30(b)(6) designee (Mr. Lowance or another representative) for further deposition on noticed Topics 5, 11, 12, 13 and 15. That supplemental submission reflects that the parties have slightly narrowed their dispute, and have conferred further about the bases for their respective positions.

Having considered the parties' original submission (Dkt. No. 230) and their supplemental submission (Dkt. No. 239), as well as the arguments presented at the hearing on April 16, 2019, the Court grants in part and denies in part Mr. Barker's and Beacon Hill's request for further deposition testimony, as set forth in detail below.

## I. SUMMARY OF THE DISPUTE

The question presented by this dispute is whether the deposition questions Mr. Lowance did not answer were within the scope of the deposition topics for which he was designated, and if so, whether Insight Global's privilege/work product objections to those questions were proper.[1] Insight Global designated Mr. Lowance for the following topics:

---

[1] Insight Global does not oppose the discovery on other grounds.

|   |   |                                                                                                                                                                                                                                                                                                                                    |
|---|---|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   | 5. | The Second Amended and Restated Insight Global LLC 2013 Incentive Unit Plan. |
|   | 11. | The basis for Insight's decision not to pay Mr. Barker his accumulated units of value under the Second Amended and Restated Insight Global LLC 2013 Incentive Unit Plan. |
|   | 12. | The identity of all persons who participated in the decision not to pay Mr. Barker his accumulated units of value under the Second Amended and Restated Insight Global, LLC 2013 Incentive Unit Plan. |
|   | 13. | Every document, including without limitation every policy, on which Insight relied in its decision not to pay Mr. Barker his accumulated units of value under the Second Amended and Restated Insight Global LLC 2013 Incentive Unit Plan. |
|   | 15. | Insight's enforcement of non-solicitation of customers provisions, non-solicitation of employees provisions and non-compete provisions against its California employees, including without limitation any notifications or reminders by Insight to its California employees of their alleged non-solicitation or non-compete obligations or any claims that an employee breached his or her alleged non-solicitation or non-compete obligations. |

Dkt. No. 230 at ECF 11-12.

Of the 93 deposition questions in dispute, Mr. Barker and Beacon Hill have withdrawn three questions (#9, #79, #83), and appear to concede that an additional eight questions (#15, #76, #77, #78, #80, #81, #82, #92) are outside the scope of the noticed topics.[2] *See* Dkt. No. 239 at ECF 2, 9, 27, 28, 30. Insight Global has offered to provide responses to eleven questions, including one that is concededly outside the scope (#5, #7, #8, #11, #12, #13, #14, #44, #45, #81 and #87), albeit in the form of written answers, not deposition testimony. *See* Dkt. No. 239 at ECF 2, 33. The 72 questions that remain in dispute are reproduced in the chart at the end of this order. For each question, the Court first considers whether the question is fairly within the scope of the noticed deposition topic, and for those that are, the Court then considers whether Insight Global's privilege/work product objection is well taken.[3]

---

[2] In their supplemental submission, Mr. Barker and Beacon Hill argue for the first time that Mr. Lowance or another Insight Global representative should be required to answer questions that are admittedly *not* within the scope of a noticed topics because Mr. Lowance's individual deposition was noticed for the same day as the Rule 30(b)(6) deposition. *See* Dkt. No. 239 at ECF 2. The Court will disregard this argument, as it is both inconsistent with the Court's direction regarding the permissible contents of the supplemental submission and legally irrelevant.

[3] Mr. Barker and Beacon Hill are correct that a party may not refuse to answer based solely on an

2

## II. DISCUSSION

### A. Questions Outside the Scope of the Noticed Deposition Topics

Of the 72 disputed questions, Insight Global agrees that thirteen questions are indeed within the scope of one or more noticed deposition topics (#20, #21, #23, #24, #31, #61, #62, #63, #64, #65, #67, #85, #86), and it raises only privilege/work product objections to those questions. For all but five of the remaining disputed questions, Mr. Barker and Beacon Hill rely on Topic 15 for their argument that the question is within the scope of a noticed topic. Accordingly, the Court begins with a consideration of the scope of Topic 15.

#### 1. Topic 15

At its broadest, Topic 15 is directed to "Insight's enforcement of non-solicitation of customers provisions, non-solicitation of employees provisions and non-compete provisions against its California employees." Mr. Barker and Beacon Hill construe this topic broadly; Insight Global construes it more narrowly. The parties appear not to have conferred about their differing views of the scope of the topic in advance of the deposition.

A reasonable interpretation of the scope of this topic is informed by both the further elaboration of the topic in the "including without limitation" clause, as well as the other topics in the deposition notice for which Insight Global produced other designees. The Court agrees that Topic 15 is not limited to "letters written to former employees about their contractual obligations to IG" (Dkt. No. 230 at ECF 5), as Insight Global contends, but encompasses more generally efforts by Insight Global to enforce non-solicitation and non-compete obligations against its California employees. However, it does not include, for example, Insight's practice of including such obligations in its agreements with California employees, which is the subject of a different topic.

Applying this interpretation, the Court finds that the following disputed questions are within the scope of Topic 15: #3, #4, #6, #22, #25, #27, #32, #33, #36, #37, #38, #39, #40, #41, #47, #48, #50, #60, #75. As to those topics, most of the disputed questions are phrased in a

---

objection that a question is beyond the scope of a noticed topic, but should instead seek relief from the Court as provided in Rule 30(c)(2) and (d)(3). However, the Court will not order Insight Global to provide further deposition testimony unless that testimony falls within a noticed topic.

manner that suggests they are seeking the personal views of the deponent; however, the topic is limited to positions taken or information known to *Insight Global*. Subject to the Court's decision on the privilege/work product objections, Mr. Barker and Beacon Hill must reformulate these questions so that they are addressed to Insight Global and not Mr. Lowance personally, or whomever Insight Global chooses to designate. As discussed below, such reformulations also may be necessary to avoid privilege/work product objections.

The following disputed questions are outside the scope of Topic 15, and Insight Global need not produce a designee to testify about them: #1, #2, #10, #16, #17, #18, #19, #26, #28, #29, #30, #34, #35, #42, #43, #46, #49, #54, #55, #56, #57, #58, #59, #66, #68, #69, #70, #71, #72, #73, #74, #88, #89, #91, #93.

### 2. Topics 5, 11, 12, 13

Topic 5 concerns the Second Amended and Restated Insight Global, LLC 2013 Incentive Unit Plan ("IUP"), and Topics 11, 12 and 13 concern Insight Global's decision to not pay Mr. Barker his accumulated units of value under the IUP. The Court finds that disputed question #84 is within the scope of Topic 5, and disputed question #90 is within the scope of Topics 11, 12 and 13. As to those topics, subject to the Court's decision on the privilege/work product objections, Mr. Barker and Beacon Hill must reformulate these questions so that they are addressed to information known to *Insight Global*, and not the individual deponent.

The following disputed questions are outside the scope of Topics 5, 11, 12 and 13, and Insight Global need not produce a designee to testify about them: #51, #52, #53.

### B. Questions Barred by the Attorney-Client Privilege or Work Product Doctrine

As indicated in the summary chart below, there are 34 questions that the Court has determined (or Insight Global has agreed) fall within the scope of a noticed topic. The Court now turns to Insight Global's privilege and work product objections to those questions.

It appears from Insight Global's portion of the joint submission that most of its privilege and work product objections are closely tied to Mr. Lowance's role as general counsel to Insight Global, and the fact that most of the questions at issue were phrased in a manner suggesting that Mr. Barker and Beacon Hill were seeking discovery of Mr. Lowance personally. While it is not

improper to designate counsel as a company representative, that designee's role as an attorney cannot be used to insulate from discovery facts known to the company. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]") At the same time, Mr. Barker and Beacon Hill may not compel personal deposition testimony of Mr. Lowance in the guise of seeking discovery of Insight Global under Rule 30(b)(6).

The Court concludes that the following deposition questions, if reformulated to seek information in the possession, custody or control of Insight Global, are principally directed to obtaining *factual information* of Insight Global and not communications subject to the attorney-client privilege or information subject to the attorney work product doctrine: #20, #21, #22, #23, #32, #36, #37, #38, #39, #40, #41, #47, #48, #50, #60, #61, #62, #64, #67, #75, #84, #86, #90. By way of example, question #20 might be reformulated as follows: "Did any Insight Global representative ever discuss with any Insight Global employees that Insight Global was not going to enforce any longer the non-solicitation of customers and clients provision?"

It may well be that complete answers to some of these reformulated questions would require the deponent to reveal privileged information of the company. Nothing in this order precludes such an objection on this ground during the further Rule 30(b)(6) deposition. For example, question #36 might be reformulated as follows: "Why does Insight Global not point out [in the document under discussion], as it does in the IUP, that certain provisions do not apply to California employees?" An answer to that question might be purely factual—e.g., a change or difference in policy—or it might indeed require the deponent to reveal advice of counsel, or both. Nothing in this order requires Insight Global to reveal advice of counsel; however, it must respond with factual information known to the company to the extent the question calls for such information, regardless of the source of those facts.

A number of the remaining deposition questions do not appear to call for factual information, but instead seek Insight Global's contentions or positions on matters having to do with its enforcement of non-solicitation and non-competition provisions. Insight Global does not

5

object to these questions on the ground that deposition testimony is not an appropriate means of discovering its contentions. However, it does object that several questions improperly seek disclosure of Insight Global's legal conclusions, legal strategy, and/or the advice of counsel. The Court concludes that the following deposition questions, if appropriately reformulated, are principally directed to obtaining Insight Global's *contentions*, as opposed to legal conclusions, legal strategy or advice of counsel: #3, #4, #6, #24, #25, #27, #31, #33. For example, question #3 might be reformulated as follows: "How does Insight Global contend the noncompete covenant should be interpreted?" And, question #24 might be reformulated as follows: "Does Insight Global contend that Ms. Gravino's calling on at least one account with whom she had contact while working at Insight Global is a violation of the at will employment agreement?" The Court expects the answers to these questions would not implicate any privilege or work product concerns; however, further questions probing *why* Insight Global so contends might well implicate such concerns. Nothing in this order requires Insight Global to reveal advice of counsel or attorney work product in response to such further questions.

With respect to question #63, Mr. Barker and Beacon Hill may not inquire about, or premise their question on an assertion of, Insight Global's or its designee's view of a decision of the California Supreme Court, and it may not seek an explanation for why Insight Global does not send letters of non-enforcement to its former employees, as that question appears to seek information that is protected from disclosure by the attorney-client privilege. Likewise, with respect to question #65**,** Mr. Baker and Beacon Hill may not inquire about Insight Global's legal analysis regarding what California law does and does not prohibit. Finally, with respect to question #85, Mr. Barker and Beacon Hill may not inquire as to whether committees within Insight Global have a conflict of interest, as that question seems designed to elicit a purely legal conclusion that likely also implicates attorney-client privilege. Mr. Barker and Beacon Hill may not inquire further about questions #63, #65 and #85.

### III. CONCLUSION

Mr. Barker and Beacon Hill may take further deposition testimony of Insight Global regarding the following questions, subject to the Court's direction that questions must be directed

6

to Insight Global and not to an individual deponent:  **#3, #4, #6, #20, #21, #22, #23, #24, #25, #27, #31, #32, #33, #36, #37, #38, #39, #40, #41, #47, #48, #50, #60, #61, #62, #64, #67, #75, #84, #86, #90**.  Insight Global may produce Mr. Lowance for further deposition or may produce another designee or designees to answer these questions.  This further deposition questioning will be limited to a total of 2.5 hours.  Mr. Barker and Beacon Hill may ask reasonable follow up questions to follow up on answers to the permitted questions, but they may not inquire as to any matters the Court has concluded are outside the scope of a noticed topic or subject to valid privilege/work product objections.  The parties shall cooperate to promptly schedule the further deposition.

**IT IS SO ORDERED.**

Dated:   April 25, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 1 | You understand that covenants not to compete are unenforceable under California law; correct?  15:17-21. | No | n/a |
| 2 | When you executed the settlement agreement on behalf of Insight Global, did you understand this provision that I just read, paragraph 13, the no-hire restriction period?  16:1-7. | No | n/a |
| 3 | The noncompete covenant to which employees are bound with Insight Global, what is your understanding of that phase [phrase]?  16:23-17:2. | 15 | No |
| 4 | Did you believe that any of MacArthur, Barker, Brodusco [Verduzco] or Cronin were subject to this no-hire restriction period, paragraph 13, of the settlement agreement?  17:7-14. | 15 | No |
| 5 | Are any of the four subject to a noncompete covenant with Insight Global?  17:25-18:23. | n/a | Insight Global agrees to answer |
| 6 | And you would agree that this settlement agreement is a [an] effort by Insight Global to enforce its restrictive covenants against its former employees; correct?  19:4-18. | 15 | No |
| 7 | To your knowledge, are any Insight Global California employees current or former subject to a noncompete?  19:23-20:2. | n/a | Insight Global agrees to answer |
| 8 | To your knowledge, has any current or former Insight Global employee, who worked in California, ever signed a covenant not to compete within a certain geographic area?  20:7-12. | n/a | Insight Global agrees to answer |
| 9 | Glen Johnson came from Tech Systems; correct? 25:15-22. | | |
| 10 | Did Insight Global fire [Chris Hubbard] for sexual harassment?  35:20-36:3. | No | n/a |

1

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 11 | Can you generally describe the efforts that Insight has undertaken to comply with the law in the various states where Insight conducts business regarding post-employment, restrictive covenants, and by that I mean covenants not to compete, nonsolicitation of customers, clients and employees and – provisions? 41:17-42:9. | n/a | Insight Global agrees to answer |
| 12 | For example, does Insight have a compliance program in place to ensure that it does not violate the law in the various jurisdictions where Insight conducts business? 43:3-8. | n/a | Insight Global agrees to answer |
| 13 | What is Insight Global's compliance program with respect to enforceability of restrictive covenants? 43:12-16. | n/a | Insight Global agrees to answer |
| 14 | Does Insight do anything to comply with the laws in the various jurisdictions where Insight conducts business with respect to post-employment, restrictive covenants? 43:18-23. | n/a | Insight Global agrees to answer |
| 15 | Do you know the employee turnover rate at Insight's San Francisco office during the same period of time, 2013 to the present? 45:17-46:1. | | |
| 16 | Are you familiar with the California Supreme Court's last post-employment restrictive covenants case, Edwards v. Arthur Anderson? 46:3-8. | No | n/a |
| 17 | When did you become familiar with the California Supreme Court's, Edwards v. Arthur Anderson decision? 46:12-15. | No | n/a |
| 18 | Do you understand that nonsolicitation of customers' provisions are unenforceable and unfair business practice in California? 46:17-23. | No | n/a |
| 19 | Did Insight Global revise its at will employment agreements in response to the Barker lawsuit? 46:25-47:3. | No | n/a |
| 20 | Did you ever discuss with any employees at Insight Global that Insight Global was not going to enforce any | 15 (not disputed) | No |

2

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| | longer the nonsolicitation of customers' and clients' provisions? 47:7-48:13. | | |
| 21 | Were you privy to discussions regarding a stipulation to that effect? In other words, a binding stipulation that would be signed by Judge Fruman [Freeman]? 48:15-19. | 15 (not disputed) | No |
| 22 | Have you seen the proposed stipulation? 49:13-17. | 15 | No |
| 23 | When would a letter go to a former employee that joins a competitor? 54:15-20. | 15 (not disputed) | No |
| 24 | It looks like you also wrote in this letter that Ms. Gravino had called on at least one account with whom she had contact while working at Insight Global. Is that a violation of her At Will Employment Agreement with Insight Global? 55:16-57:4. | 15 (not disputed) | No |
| 25 | Is it a breach of any agreement with Insight Global for a former employee to do business with a customer or client who they had contact with at Insight Global? 57:6-12. | 15 | No |
| 26 | What is your understanding of what that [the inevitable disclosure theory] means? 57:14-21. | No | n/a |
| 27 | Is it Insight's philosophy that since we trained you as an employee, you can't leave and go work for a competitor; everything you know, you learned from us? 58:4-14. | 15 | No |
| 28 | Do you agree with Mr. Bean's statement with regard to employee knowledge, employee training at Insight Global, that if employees leave, whatever knowledge they are going to know about staffing is going to be learned from Insight Global and constitutes Insight Global's trade secrets? 59:16-24. | No | n/a |

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 29 | In the course of your job, did you research and find the Supreme Court of California's 2008 decision in Edwards vs. Arthur Anderson regarding nonsolicitation of customers' provisions? 71:22-72:4. | No | n/a |
| 30 | Have you ever read the Edwards' case? 72:8-10. | No | n/a |
| 31 | In the next letter here, you are telling a former employee in 2014 that they cannot solicit or attempt to solicit any customers or clients with whom they had material contact while at Insight Global --- I think there is a typo, any staffing service business? Isn't that an attempt to threaten an employee with an unenforceable customer nonsolicitation provision? 73:5-14. | 15 (not disputed) | No |
| 32 | And what do you mean by "if applicable," in this context? 79:7-13. | 15 | No |
| 33 | Isn't the purpose of this [the Separation Agreement] to restrain former employees of Insight Global? 83:23-84:5. | 15 | No |
| 34 | You have known that since 2013, when you became general counsel of Insight Global, that California law forbids post-employment noncompetes; correct? 85:15-24. | No | n/a |
| 35 | Does Insight Global contend that all five or [of] these provisions are enforceable under California law? 86:3-7. | No | n/a |
| 36 | Why not point out, as you do in the IUP plan that certain provisions don't apply to California employees? 87:2-9. | 15 | No |
| 37 | Why not just say this agreement not to compete doesn't apply to California employees? 87:11-17. | 15 | No |
| 38 | Why do you include a business location at all in a separation agreement with a California employee? 95:13-23. | 15 | No |
| 39 | What was your intent in drafting that sentence [Section 5-B of Separation Agreement]? 98:24-99:4. | 15 | No |

4

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 40 | Was your intent to dissuade former Insight employees in California from going to work for the competition? 99:8-16. | 15 | No |
| 41 | Isn't it true, Mr. Lowance, that the purpose, intent and effect of these post-employment restrictive covenants in the standard Insight separation agreement, are to dissuade and inhibit former employees in California from accepting jobs with Insight's competitors in the staffing industry? 103:3-20. | 15 | No |
| 42 | Do you make a distinction in your mind between solicitation and inducement? 108:20-109:3. | No | n/a |
| 43 | You would agree, Mr. Lowance, that if an Insight Global employee in San Francisco reached out to John Barker and asked about Beacon Hill, that that by itself would not be a violation of a nonsolicitation provision? 109:7-17. | No | n/a |
| 44 | Isn't it true that Insight Global has never advised its California employees that any of these post-employment restrictive covenants do not apply to them? 109:21-110:4. | n/a | Insight Global agrees to answer |
| 45 | Are you aware of Insight Global ever telling any California employee that the nonsolicitation of customers and clients provision is not enforceable under California law? 110:6-13. | n/a | Insight Global agrees to answer |
| 46 | When you authored this termination letter to my client, John Barker, you knew he was not subject to a noncompete under California law; correct? 113:13-18. | No | n/a |

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 47 | You say the "Documents contain restrictions designed to protect Insight Global's confidential business information, and goodwill from actions by former employees including commitments not to one compete against Insight Global in its lines of business within certain geographic areas." Why did you say that if he was not subject to a noncompete? 114:4-17. | 15 | No |
| 48 | Why did you write that he was subject to commitments not to compete against Insight Global in its lines of business within certain geographic areas? 114:22-115:3. | 15 | No |
| 49 | Were you trying to confuse John Barker into thinking he couldn't compete with Insight Global by writing this language? 115:6-9. | No | n/a |
| 50 | What did you mean when you said, he had a commitment not to compete against Insight Global in its lines of business within certain geographic areas? 115:11-116:12. | 15 | No |
| 51 | Why did the company terminate him for cause? 118:10-23. | No | n/a |
| 52 | Why would you use the word "cause" if he is at will? What other reason would you use "cause" if he was an at will employee? 119:18-22. | No | n/a |
| 53 | Did you understand, when you wrote this letter, that cause had a certain meaning? 120:12-17. | No | n/a |
| 54 | Isn't it true you wrote your termination letter to my client, John Barker, in a deliberately misleading manner to restrain competition by him? 121:25-122:11. | No | n/a |
| 55 | Isn't true that you knew full well when you wrote your letter firing my client, John Barker, he was not subject to any legally enforceable covenant not to compete? 122:15-20. | No | n/a |

6

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 56 | Isn't it true that you knew full well when you wrote your letter firing John Barker that he was not subject to any legally enforceable covenant not to solicit Insight's current or prospective clients and customers?  122:24-123:6. | No | n/a |
| 57 | Isn't it also true, Mr. Lowance, that when you wrote your letter firing my client, you knew full well that Section 7 of the National Labor Relations Act prohibited any contract provision prohibiting Insight's current or former employees for [from] making "disparaging statements about Insight or its employees"?  123:9-16. | No | n/a |
| 58 | In fact that legal prohibition is confirmed in Insight's own National employee handbook, correct, protected concerted activities?  You can't disparage an employer – hear about all the Facebook cases last year, two years ago?  123:19-124:2. | No | n/a |
| 59 | Isn't it true that you deliberately included the words "if applicable" in Insight's form separation agreements to confuse Insight's California employees and to restrain them from competing with Insight in the staffing industry?  124:6-12. | No | n/a |
| 60 | Isn't it also true that Insight's desires to restrain and intimidate former employees from competing with Insight, knowing that Insight's current and former employees are not bound by any noncompete obligation or any nonsolicitation of customers' provision?  124:14-23. | 15 | No |
| 61 | Isn't it true that Insight includes these post-employment restrictive covenants in your reminder letters to former employees and in Insight standard form separation agreements, to restrain the competition by former employees?  124:25-125:7. | 15 (not disputed) | No |

7

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 62 | And another is to intimidate current and former employees from competing. Isn't that true? 125:9-23. | 15 (not disputed) | No |
| 63 | So knowing what you now know through the Barker lawsuit that California doesn't recognize covenants not to compete, California Supreme Court back in 2008 ruled that nonsolicitation of customers' provisions are unenforceable, they are a disguise noncompete – knowing that now, why don't you send letters to your former employees to let them know that we won't enforce these against you? 125:25-126:14. | 15 (not disputed) | Yes |
| 64 | Is there any reason why when you revised the At Will Employment Agreements in February of 2017 for California employees or some California employees, that you didn't notify former employees that they are no longer bound by that nonsolicitation of customers' provision? 126:18-127:2. | 15 (not disputed) | No |
| 65 | There is no law prohibiting a former employee from having any contact with a former employer's customer under California law; correct? 136:20-137:21. | 15 (not disputed) | Yes |
| 66 | To ask one more question on this point, if a former Insight Global account manager working in California resigns or is terminated and then goes to work for another staffing firm, a competitor, there is nothing in either the At Will Employment Agreement or the law that would prevent the employee from receiving calls from former customers with whom they had contact with at Insight, is there? 137:23-138:8. | No | n/a |

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 67 | It goes on to say, as that would necessarily require the use of that same confidential business information. Did you mean by this that a former employee would not be able to have any contact with a former customer who they had contact with while at Insight Global? 143:20-144:8. | 15 (not disputed) | No |
| 68 | The question is whether Insight Global considers the mere identities of plants [clients] and plant [client] hiring managers to be a secret? 146:5-19. | No | n/a |
| 69 | Did Insight Global target my client, Beacon Hill, because of the Barker lawsuit? Specifically, the Texas lawsuit, the Illinois lawsuit, the New York lawsuit? 153:24-154:8. | No | n/a |
| 70 | In other words, John Barker wasn't willing to play ball and Beacon Hill wasn't willing to cave to Insight Global. So you decided – Insight decided to sue Beacon Hill as a practice retaliation? 154:10-155:21. | No | n/a |
| 71 | Isn't it true that because John Barker and Beacon Hill were not willing to cave to Insight Global's tactics that Insight Global, as a business practice, decided to compete through litigation? 155:23-156:9. | No | n/a |
| 72 | Wasn't the reason because California does not recognize or enforce noncompetes? 157:14-25. | No | n/a |
| 73 | You understand though, as of the date you signed this agreement that California did not allow noncompetes – post-employment noncompetes? 158:17-25. | No | n/a |
| 74 | When did you learn that California does not allow post-employment noncompetes? 159:4-160:3. | No | n/a |
| 75 | Do you know why the parties agreed to a carve out for California law in the settlement agreement marked as 113? 160:8-15. | 15 | No |

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 76 | You were asked [sic] questions of current employees of Insight Global; correct? 162:17-163:3. | | |
| 77 | Did you tell any of these employees employ [sic] who you are going to give raises to, that you were seeking legal advice? 163:5-10. | | |
| 78 | Why these particular employees and not others in the San Francisco office? 165:15-19. | | |
| 79 | Do you know whether Austin March has resigned his employment with Insight Global? 168:4-11. | | |
| 80 | Are the recruiters considered outside the [sic] salespersons? 173:14-25. | | |
| 81 | The reason I ask is, there is not a signed arbitration agreement in John Barker's personnel file. Do you know one way or the other why he didn't sign one or wasn't asked to sign one if this was implemented in July of 2014? 176:11-22. | n/a | Insight Global agrees to answer |
| 82 | Were some California employees asked to sign the arbitration agreement and some not asked? 176:24-177:9. | | |
| 83 | Have you reviewed the party's [sic] discovery responses served in this case? 178:11-20. | | |
| 84 | Why was the was the [sic] 2007 plan amended and restated, to your knowledge? 185:21-186:8. | 5 | No |
| 85 | Is there a conflict of interest to have the compensation committee having a stake at Insight Global, and then deciding a benefit claim under the plan? 196:6-15. | 11, 12 (not disputed) | Yes |
| 86 | Why would it treat the Complaint as a claim for benefits under the plan, as opposed to paying those benefits out in the ordinary course? 202:5-10. | 5, 11, 12, 13 (not disputed) | No |

| No. | Question | Within Noticed Topic? | Privilege or Work Product? |
|---|---|---|---|
| 87 | Were there any formal procedures implemented to ensure that company finances were not a factor in deciding John Barker's claim for IUP benefits; and by company I mean Insight Global, LLC?  208:5-16. | n/a | Insight Global agrees to answer |
| 88 | Would that make a difference as to whether she was solicited by John Barker, if she admitted that she told Barker in the presence of numerous witnesses as Brian Bradusco's [Bryan Verduzco's] engagement party, "take me wherever you go"?  217:7-14. | No | n/a |
| 89 | During your interviews with Insight Global employees in San Francisco, did any Insight employees indicate that had sought out John Barker for employment opportunities or advice?  220:3-9. | No | n/a |
| 90 | Why would you include a cause finding in the termination letter, if that wasn't tied to the plan?  222:24-223:5. | 11, 12, 13 | No |
| 91 | Do you think it is fair to require an employee in California to fly out to Georgia to litigate a claim under the separation agreement?  225:14-20. | No | n/a |
| 92 | Were there any employees in the San Francisco office of Insight Global that declined to meet with you and Mr. Marquardt when you came out to obtain the declarations or affidavits?  233:11-21. | | |
| 93 | Is there a difference in your mind between induce or intend to induce to and solicit?  236:23-237:2. | No | n/a |